# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>   Dille Family Trust, (putatively, a California Business Trust),<br><br>        Debtor.<br>-----------------------------------------------------------<br>Dille Family Trust, (putatively, a California Business Trust)<br><br>        Movant,<br><br>   vs.<br><br>Don Murphy,<br><br>        Respondent. | Bankruptcy No. 17-24771 JAD<br><br>Chapter 11<br><br>Hearing Date and Time:<br>   February 22, 2018 at 10:00 a.m.<br><br>Response Deadline:<br>   February 8, 2018<br><br>Related to Doc. Nos. 49 and 50<br><br>Doc. No. _____ |

## MEMORANDUM OF LAW IN SUPPORT OF RESPONDENT'S OPPOSITION TO MOTION TO ENFORCE AUTOMATIC STAY AND FOR SANCTIONS

Through its Motion—a Motion bereft of supportive authority—the Debtor has argued that the Respondent violated the automatic stay by expressing his views to the Debtor's prospective auctioneer. The Debtor is mistaken in its understanding of the near-infinite breadth of the automatic stay and its Motion must be denied for at least three reasons. First, the Respondent's conduct simply does not fall within the ambit of the automatic stay. Second, the Debtor may have no legally protectable interest in its alleged intellectual property and, thus, the automatic stay would have no application to property itself. Finally, the automatic stay should not be casually interpreted to limit the Respondent's free exercise of his rights under the First Amendment.

### Background

On November 28, 2017, the Debtor commenced this case by filing its voluntary petition for relief under chapter 11 of the Bankruptcy Code. Prior to seeking bankruptcy relief, the

Debtor had been embroiled in litigation with Team Angry Filmworks, Inc. over the issue of whether certain intellectual property rights to the fictional "Buck Rogers" character, which the Debtor alleges belong to it, are in the public domain. The Respondent, whose Declaration is attached to this Memorandum as *Exhibit B,* is the President of Team Angry Filmworks, Inc.

## Argument

**A. THE RESPONDENT'S COMMUNICATION WITH THE DEBTOR'S PROSPECTIVE AUCTIONEER DID NOT VIOLATE THE AUTOMATIC STAY.**

The Debtor has made no effort to identify any part of section 362(a), which the Respondent may have violated by sending an email to the Debtor's proposed auctioneer on January 16, 2018 (the "*Email*"). A copy of the Email is attached hereto as *Exhibit A*. In fact, the automatic stay does not confer upon the Debtor a blanket right to silence parties whose opinions do not align with its interests. "Although the reach of the automatic stay is broad, it is not unlimited." 3 *Collier on Bankruptcy* ¶ 362.01 (16th ed. 2017). The Court of Appeals for the Third Circuit has explained:

> [T]he "fresh start" policy does not entitle a debtor to rights not granted by Congress: the statutory protections define the scope of the policy, not the other way around. [The debtor's] "breathing spell" also is sufficiently protected. *The respite is not from communication with creditors*, but from the threat of immediate action by creditors, such as a foreclosure or a lawsuit.

*Brown v. Pa. State Emps. Credit Union*, 851 F.2d 81, 86 (3d Cir. 1988) (emphasis added). When applicable, 362(a) of the Bankruptcy Code automatically stays the following:

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
(4) any act to create, perfect, or enforce any lien against property of the estate;
(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;
(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and
(8) the commencement or continuation of a proceeding before the United States Tax Court concerning a tax liability of a debtor that is a corporation for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

11 U.S.C. § 362(a). The Respondent's Email could not reasonably be interpreted to violate any of the automatically stayed matters enumerated in section 362(a). Rather, the Email contained information duplicative of that which had already been available in the public record. Section 362(a) did prevent the Respondent's civil action from moving forward, but it did not automatically impose upon him a gag order. The Respondent continued to hold the privilege to provide his perspective through the Email and he did not violate the automatic stay when he did so.

**B.    THE DEBTOR MAY NOT HAVE AN INTEREST IN THE INTELLECTUAL PROPERTY THAT COULD BE PROTECTED THROUGH THE AUTOMATIC STAY.**

While the Debtor may well prefer to leave unresolved the issue of whether its purported "Buck Rogers" IP rights had entered the public domain until after it peddles them to a buyer, the automatic stay is not a vehicle for debtors to avoid adjudication of ownership rights. 3 Collier on

Bankruptcy ¶ 362.03 (16th 2017) ("The stay does not apply to collection of postpetition claims out of property that is not property of the estate."). For that reason, it was proper for the Respondent to have advised an auctioneer who might be charged with liquidating that alleged IP that the Debtor may not have any interest to sell.

The Debtor has misread 28 U.S.C. § 1334(e), together with the Standing Order of Reference, to conclude that this Court has exclusive jurisdiction to determine the extent of the Debtor's property or property of the estate. This Court is not an Article III court and its jurisdiction is limited. In fact, withdrawal of the reference is mandatory if an "action requires a substantial and material consideration of a federal statute outside the Bankruptcy Code." *SNMP Research Int'l, Inc. v. Nortel Networks, Inc. (In re Nortel Networks, Inc.)*, 539 B.R. 704, 708 (D. Del. 2015). Moreover, "Article III prevents bankruptcy courts from entering final judgment on claims that seek only to 'augment' the bankruptcy estate and would otherwise "exis[t] without regard to any bankruptcy proceeding." *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1941, (U.S. 2015) *citing Stern v. Marshall*, 564 U.S. 462, 495 (2011).

Indeed, one of the two beneficiaries of the Debtor, Flint Dille, who was copied on the Email, has never voiced any objection to the Respondent's opinion expressed in it. Moreover, the Debtor's attempt to claim to an interest in intellectual property rights to material already in the public domain is not protected by the automatic stay. 11 U.S.C. § 362(a). It is noteworthy that the Respondent's view that it is impossible to "infringe" upon rights to material within the public domain was one shared by the late and respected Judge Richard Posner of the U.S. Court of Appeals for the Seventh Circuit. A fortiori, the Respondent could not have violated the automatic stay if the property interest that would be protected is within the public domain.

### C. COURTS MUST AVOID INTERPRETATIONS OF THE AUTOMATIC STAY THAT LIMIT NON-DEBTOR'S FIRST AMENDMENT RIGHTS.

The Debtor is not entitled to a prior restraint enjoining Respondent's expression of his opinion under the First Amendment. *See* 3 Collier on Bankruptcy ¶ 362.03 (16th 2017) ("a creditor's threat to publicize a debtor's chapter 11 status and its inability to pay its debts was protected by the First Amendment."). Vindicating the importance of the rights of parties in interest in bankruptcy cases to exercise their rights to free speech under the First Amendment, the Court of Appeals for the Fifth Circuit overturned an order restraining the appellant from posting billboards advertising appellee's filing for bankruptcy and its inability to pay its bills, finding that the order represented a prior restraint upon pure speech. *In re Nat'l Serv. Corp.*, 742 F.2d 859, 862 (5th Cir. 1984). In arriving at its decision, the Fifth Circuit reasoned:

> The Supreme Court, in a plethora of cases, has held that prior restraints come before the Court with a "heavy presumption" against their constitutional validity. When the content of pure speech is restrained and prohibited, the restraint bears a heavy presumption against its validity and mandates the closest scrutiny. A review of the bankruptcy and district courts' decisions demonstrates that the content of [Appellant]'s message was restrained and prohibited. The blanket provisions of the bankruptcy judge's order prohibited [Appellant] from disseminating its message simply because the message was thought to be threatening to [Appellee]. The mere fact that [Appellee] would be damaged by [Appellant]'s dissemination of the message, however, does not warrant a prior restraint. Indeed, [] the Supreme Court [has] stated that the interest of an individual in being free from public criticism of his business practices did not warrant use of a prior restraint on free speech.

*Id.* (internal citations omitted); *also*, *In re Stonegate Sec. Servs., Ltd.*, 56 B.R. 1014, 1020 (N.D. Ill. 1986) ("[I]n the absence of some language presenting a clear and present danger of some significant interference with the debtor's reorganization, or with the functions of the bankruptcy court, § 362 cannot prohibit public criticism.").

The expression of the Respondent's opinion in the Email is entitled to protection under the First Amendment. Judge Posner observed in *Klinger v. Conan Doyle Estate, Ltd.*, 761 F.3d 789, 791 (2014) that copyright holders, or alleged copyright holders, "have larger potential upsides and smaller downside risks to filing suit, since if they win they obtain damages but if they lose they don't have to pay damages…[s]o copiers or alleged copiers may be induced into licensing that is, paying a fee for a license to reproduce the underlying work, even if this license is unnecessary or conveys non-existent rights." *Klinger v. Conan Doyle Estate, Ltd.*, 761 F.3d 789, 791 (2014) (internal citations omitted). Judge Posner further referenced the song "Happy Birthday to You" as an example. At that time, the "Happy Birthday" case had not yet been adjudicated and the purported owners of the song received annual royalty payments of approximately $2 million, "despite the fact that the song is most likely in the public domain." *Id.* (internal citations omitted). Eventually, in *Rupa Marya, et al. v. Warner/Chappell Music, Inc., et al.,* No. CV 13-4460-GHK (C.D. Cal. Sept. 22, 2015), the court ruled that Warner/Chappell Music had no enforceable copyright for the song and that it had entered into the public domain, putting the thousands of dollars in licensing fees collected by Warner/Chappell over the years subject to return to several licensees. In this case, the Respondent resolutely believes that the Debtor has been engaging in similar conduct and his decision to express that belief must not be construed as a violation of the automatic stay.

<u>Conclusion</u>

For the foregoing reasons, this Court must deny the Debtor's Motion.

Dated: February 8, 2018                                       Respectfully submitted,


  /s/ Aurelius P. Robleto
Aurelius P. Robleto
PA I.D. No. 94633
ROBLETO LAW, PLLC
Three Gateway Center
401 Liberty Avenue, Suite 1306
Pittsburgh, PA 15222
Tel: (412) 925-8194
Fax: (412) 346-1035
apr@robletolaw.com

Attorneys for Respondent Don Murphy