**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: <br><br> DILLE FAMILY TRUST, a California Business Trust, <br><br> Debtor. | Case No.: 17-24771-JAD <br><br> Chapter 11 <br><br> Document No.: ___ <br><br> Related to Doc. No. 82, 84 |

DON MURPHY and TEAM ANGRY FILMWORKS, INC.,

     Movants,

Vs.

DILLE FAMILY TRUST, (putatively, a California Business Trust),

     Respondent.

**MEMORANDUM OF LAW IN SUPPORT OF DON MURPHY AND TEAM ANGRY FILMWORKS, INC'S MOTION TO DISMISS OR CONVERT THE CHAPTER 11 CASE OF DILLE FAMILY TRUST, FOR CAUSE, PURSUANT TO 11 U.S.C. § 1112(b)**

     The Nowlan Family Trust ("NFT"), by and through its undersigned counsel, submits this Memorandum of Law in Support of Don Murphy and Team Angry Filmworks, Inc.'s Motion to Dismiss or Convert the Chapter 11 Case of Dille Family Trust, For Cause, Pursuant to 11 U.S.C. § 1112(b) (ECF No. 90), and respectfully requests that this Court dismiss the Dille Family Trust's ("DFT") bankruptcy case or, in the alternative, convert the chapter 11 case to a case under chapter 7.

**I.    INTRODUCTION**

     1.    The underlying legal dispute between NFT and DFT over the "BUCK ROGERS" trademark has been pending for more than nine years in a number of different legal venues. During

that time, DFT has employed an array of litigation tactics that have resulted in unnecessary delay and expense to both parties. DFT's bankruptcy filing is another such litigation tactic.

2. On the eve of trial in DFT's appeal to the United States District Court for the Eastern District of Pennsylvania from an order of the United States Patent and Trademark Office's Trademark Trial and Appeal Board dismissing DFT's Opposition to NFT's trademark application for BUCK ROGERS (s*ee The Dille Family Trust v. The Nowlan Family Trust*, Civ. No. 15-6231, ECF No. 1 (E.D. Pa. Nov. 19, 2015 (the "Eastern District Action")), DFT filed its bankruptcy petition to take advantage of rights provided by the Bankruptcy Code, namely the protections of the automatic stay. DFT's bankruptcy was not commenced in good faith because it could not necessarily preserve value to creditors that would have been lost outside of bankruptcy. Based on its bankruptcy filings, DFT is little more than a litigious shell of a family trust lacking any discernible economic activity. (*See* ECF No. 17.)

3. DFT readily admits that its licensing business was insufficient to independently fund its litigious nature. (*See* ECF No. 11 at 3.) When one of DFT's beneficiaries determined the litigious nature of DFT was no longer worth funding, DFT used bankruptcy as a tool to escape those litigations. (*See* ECF No. 11 at 3.)

4. Moreover, DFT's bankruptcy filings demonstrate a lack of good faith in filing and maintaining a Chapter 11 bankruptcy. DFT has no intention to reorganize. DFT's stated purpose is to liquidate whatever assets it has, even if DFT's ownership of those assets is ambiguous or currently at issue in one or more litigations. (*See* ECF No. 11 at 3-4.)

5. The only rationale for DFT's Chapter 11 filing in place of a Chapter 7 filing is to avoid the appointment of an impartial case trustee to administer the case and liquidate assets,

2

which allows the current trustee Louise Geer, who is embroiled in various conflicts of interest, to remain in control of DFT.[1]

6. The want of control is further illustrated by the suspect actions of Daniel Herman since the filing of DFT's bankruptcy petition. Mr. Herman represented to the United States District Court for the Eastern District of Pennsylvania that DFT has not retained him subsequent to the filing of the bankruptcy petition, and will not be able to retain him as he is a creditor. (*See* Ex. A (Dec. 21, 2017 Ltr. to. J. Beetlestone).) Yet, on the same day he made such a representation, Mr. Herman continued to litigate the case on behalf of DFT by filing a Motion to Transfer Venue. (*See* Ex. B.) Mr. Herman also appeared at the March 13, 2018 hearing on DFT's Application to Employ Heritage Auctions as Auctioneer (ECF No. 11.) At that hearing, Mr. Herman doubled-down on his representation that he has not been retained by DFT. Despite this representation, it became abundantly clear that Mr. Herman has been actively involved in the affairs of DFT and was soliciting potential bidders for DFT's assets. Mr. Herman's motivations are suspect and he is clearly continuing to assert himself despite his representations to the contrary and his significant conflicts of interest.

7. For the reasons more fully articulated below, NFT supports Don Murphy and Team Angry Filmworks, Inc.'s Motion requesting that this Court dismiss or convert the DFT's bankruptcy case.

---

[1] Louise Geer, Esq. has been the nominal trustee of DFT since 2011. Louise Geer is also an attorney and member of Geer & Herman, P.C. which is the firm of DFT's trial counsel, Daniel Herman in the Eastern District Action. Geer and Herman P.C. is one of the largest creditors in this bankruptcy case with an unsecured claim of $143,500.00. (*See* ECF No. 17 at 142.) Louise Geer is also married to Daniel Herman. Louise Geer is also an officer and the Vice President of Hermes Press, a comic book publishing company that had a licensee from DFT to produce a three volume set of reprints of the BUCK ROGERS comic strips. Daniel Herman is also the Publisher of Hermes Press. (*See also* Declaration of Robert Nichols Flint Dille, ECF No. 90-2 at 2-4.)

**II.   BACKGROUND**

8.   On January 15, 2009, NFT filed an intent-to-use trademark application for the mark BUCK ROGERS with the United States Patent and Trademark Office (hereinafter "NFT's Trademark Application.")[2]

9.   DFT's last remaining U.S. trademark registrations (Reg. Nos. 714,184 and 1,555,871)[3] were cited against NFT's Trademark Application during its prosecution.

10.   On October 26, 2009, NFT petitioned to cancel Reg. Nos. 714,184 and 1,555,871, based, in part, on claims that the registrations were abandoned and were being fraudulently maintained by DFT.

11.   On January 25, 2011, DFT voluntarily surrendered Reg. Nos. 714,184 and 1,555,871 under Trademark Act Section 7(e), 15 U.S.C. § 1057(e).  The Trademark Trial and Appeal Board ("TTAB") entered judgment against DFT and canceled DFT's Reg. Nos. 714,184 and 1,555,871.  (Ex. C.)

12.   On June 14, 2011, NFT's Trademark Application proceeded to publication and published in the *Official Gazette.*[4]

13.   On July 12, 2011, DFT filed a Notice of Opposition alleging that NFT's Trademark Application is likely to cause confusion, will dilute DFT's mark under Section 43(a)

---

[2]  An intent-to-use trademark application allows an applicant to file for trademark protection if the applicant has not actually used the mark yet in commerce, but can claim that it has a bona fide intention to use the mark in the future.  *See* 15 U.S.C. § 1051(b).

[3] U.S. Trademark Reg. No. 714,184 was a registration for the mark "BUCK ROGERS" for newspaper comic strips in International Class 16.  U.S. Trademark Reg. No. 1,555,871 was a registration for the mark "BUCK ROGERS" for board games in International Class 28.

[4] *See* 15 U.S.C. § 1062.

and/or (c) of the Lanham Act, and that DFT has prior rights in the BUCK ROGERS mark ("Opposition").

14. On September 25, 2015, after four years and the full opportunity for the parties to take discovery, present their evidence, brief the case, and present oral argument, the TTAB issued an order dismissing DFT's Opposition, finding that DFT "failed to demonstrate proprietary rights in the BUCK ROGERS designation prior to [NFT's] filing date." (Ex. D.)

15. On November 19, 2015, DFT appealed the TTAB's September 25, 2015 Order dismissing DFT's Opposition to the United States District Court for the Eastern District of Pennsylvania.

16. In addition to its appeal, DFT asserted nine additional causes of action in the Eastern District Action. (*See* Eastern District Action, ECF Nos. 1, 8, 29.) Many of these additional causes of action did not survive several motions to dismiss. (*See* Eastern District Action, ECF Nos. 7, 9, 28, 32, 55.) The remaining additional causes of action did not survive summary judgment. (*See* Eastern District Action, ECF Nos. 106-107, 154, 155.)

17. In other words, after two years and a waste of time, expense, and judicial resources, the Eastern District Action was in the same place it would have been had DFT never asserted its additional claims. NFT maintains that DFT's additional causes of actions were baseless and were asserted for no other reason than to drive up the litigation costs for NFT.

18. DFT's litigation tactics were not confined to asserting claims that it should have known could not withstand a motion to dismiss or motion for summary judgment. While the Opposition was pending, on April 10, 2012, DFT filed a Writ of Summons on individuals holding themselves out as the NFT and the NFT in the Court of Common Pleas of Lawrence County, Pennsylvania ("Lawrence County Action"). During the four years the Lawrence County

Action was pending, DFT amended its complaint two times and sought a third amendment. The Lawrence County Action was purportedly for the purpose of identifying who represented the rights of the heirs of Philip F. Nowlan and who would have legal authority to bind all of the agents, servants, representatives and heirs of Phillip F. Nowlan. The Court ultimately dismissed the Lawrence County Action as moot on May 23, 2016. The Lawrence County Action had no merit, yet DFT's counsel kept the matter pending for over four years for no apparent purpose other than using it to threaten NFT and the beneficiaries of Philip F. Nowlan and to waste NFT's resources. Based on the Declaration of Mr. Dille, this was a consistent litigation tactic employed by DFT for intimidation and harassment purposes. (*See* ECF No. 90-2 at 4.)

19. On September 1, 2017, a trial schedule was issued in the Eastern District Action. (*See* Eastern District Action, ECF No. 157.) A pretrial conference was scheduled for February 2, 2018 and trial was scheduled to commence on February 5, 2018. (*See id.*)

20. On October 19, 2017, counsel for NFT contacted DFT's counsel regarding preparation of the pretrial order. (*See* Ex. E.) DFT's counsel did not respond and on November 17, 2017, counsel for NFT again contacted DFT's counsel regarding the same. (*See* Ex. F.)[5]

21. On November 28, 2017, just 69 days before trial was scheduled to commence, DFT filed its bankruptcy petition. (*See* ECF No. 1).

22. On November 29, 2017, DFT filed a suggestion of bankruptcy in *Team Angry Filmworks, Inc. v. Louise A Geer, as Trustee of the Dille Family Trust,* Civ. No 15-1381, ECF No. 115 (W.D. Pa. November 29, 2017). However, DFT did not file a suggestion of bankruptcy in the Eastern District Action. NFT believes this was yet another litigation tactic designed to

---

[5] DFT's bankruptcy filings indicate that DFT was preparing for bankruptcy at least as early as November 15, 2018. (*See* ECF No. 17 at 109.)

keep NFT unaware of the bankruptcy filing so that it could move forward with an auction without opposition.

23. NFT became aware of DFT's bankruptcy filing, and on December 11, 2017, counsel for NFT contacted counsel for DFT regarding DFT's petition for bankruptcy. (Ex. G.)

24. On December 14, 2017, counsel for DFT forwarded a letter from DFT's bankruptcy counsel to NFT's counsel. (Ex. H.) That letter demanded that NFT comply with the automatic stay of section 362(a) of the Bankruptcy Code because it alleged that the Eastern District Action was an action "against the debtor." (Ex. H.)

25. Counsel for NFT responded, clarifying that the action pending in the Eastern District of Pennsylvania was brought by the Dille Family Trust and was not an action "against the debtor." (Ex. I.) Counsel for NFT requested a conference call with DFT's bankruptcy counsel to discuss that issue and the posture of the Eastern District Action. (Ex. I.)

26. Bankruptcy counsel for DFT did not respond to NFT's request for a conference. As a result, counsel for NFT sought the guidance of Judge Bettlestone in an abundance of caution, given the imminent trial date. (Ex. J.)

27. Judge Bettlestone scheduled a telephone conference call with the parties for December 22, 2017.

28. On December 21, 2017, DFT's trial counsel, Daniel Herman, informed the Court that he had not been retained by the Bankruptcy Estate, was not able to be retained because of his status as a creditor, and requested the conference call be postponed. (Ex. A.)

29. Following DFT's counsel's December 21, 2017 letter in which he represented to the Court that he had not been retained by the Bankruptcy Estate, counsel for DFT filed a motion

7

to transfer venue to the United States Bankruptcy Court for the Western District of Pennsylvania. (Ex. B.)

30. On December 22, 2017, a telephone conference call was held with Judge Bettlestone. Based on the conference call, it was NFT's understanding that DFT would file a suggestion of bankruptcy and take a position with respect to the automatic stay.

31. On December 22, 2017, a suggestion of bankruptcy was filed, however it did not take a clear position with respect to the automatic stay provisions of 11 U.S.C. § 362. (Ex. K.)

32. In the interim, on December 13, 2017, DFT filed an Application to Employ Heritage Auctions as Auctioneer. (*See* ECF No. 11.) During the March 13, 2018 hearing on said application, Mr. Herman represented to the court that he had done considerable research on Heritage Auctions and that they were one of the biggest and best auction houses in the world. Such research must have occurred prior to the filing of that application or the petition for bankruptcy.

33. On December 26, 2017, counsel for NFT requested a conference call with counsel for DFT with respect to the absence of a filing providing a clear position regarding an automatic stay. (Ex. L.)

34. Counsel for NFT did not receive a response from DFT's counsel or DFT's bankruptcy counsel. NFT did receive a letter from DFT's counsel's paralegal on December 27, 2017, indicating that counsel for DFT's counsel was unavailable until January 3, 2018. (Ex. M).

35. On January 2, 2018, prior to the date DFT's counsel's paralegal stated counsel would be available, DFT filed a motion seeking enforcement of the automatic stay (*see* ECF No. 20), which was later rendered moot by the Eastern District Action being stayed.

36. On January 3, 2018, NFT filed an emergency motion for an order granting relief from the automatic stay pursuant to 11 U.S.C. § 362(d) to the extent that the automatic stay was applicable. (*See* ECF No. 26.) That motion is currently pending.

### III. LEGAL STANDARDS

37. Section 1112(b) of the Bankruptcy Code provides, in pertinent part, that "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . ." 11 U.S.C. § 1112(b).

38. Chapter 11 bankruptcy petitions are subject to dismissal for cause under section 1112(b) unless filed in good faith, and the burden is on a debtor to establish that its petition has been filed in good faith. *See In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 118-20 (3d Cir. 2004), citing *In re SGL Carbon Corp.*, 200 F.3d 154, 159-62 (3d Cir. 1999).

39. Whether the good faith requirement has been satisfied is a "fact intensive inquiry" in which the court must examine "the totality of facts and circumstances" and determine where a "petition falls along the spectrum ranging from the clearly acceptable to the patently abusive." *Integrated Telecom*, at 118, quoting *SGL*, at 162.

40. "At its most fundamental level, the good faith requirement ensures that the Bankruptcy Code's careful balancing of interests is not undermined by petitioners whose aims are antithetical to the basic purposes of bankruptcy." *Integrated Telecom*, 384 F.3d at 119. The duty of good faith "is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy." *SGL Carbon*, 200 F.3d at 161 (quoting *Little Creek Dev. Co. v. Commonwealth Mortg. Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986)).

41. The two basic purposes of Chapter 11 as identified by the Supreme Court are (1) "preserving going concerns" and (2) "maximizing property available to satisfy creditors." *Integrated Telecom*, at 119, quoting *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453, 119 S.Ct. 1411, 143 L.Ed.2d 607 (1999).

42. Following these principles, cases in the Third Circuit have focused on two inquiries particularly relevant to the question of good faith: (1) whether the petition serves a valid bankruptcy purpose, e.g., by preserving a going concern or maximizing the value of the debtor's estate, and (2) whether the petition is filed merely to obtain a tactical litigation advantage. *Integrated Telecom*, at 119-120; *SGL Carbon*, 200 F.3d at 165.

43. It is well established in the Third Circuit that filing a chapter 11 petition merely to obtain a tactical litigation advantage independently establishes a lack of good faith. *See Integrated Telecom*, 384 F.3d at 120; *see also SGL Carbon*, 200 F.3d at 165 ("[B]ecause filing a Chapter 11 petition merely to obtain tactical litigation advantages is not within 'the legitimate scope of the bankruptcy laws,' courts have typically dismissed Chapter 11 petitions under these circumstances as well.") (quoting *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994)).

44. Where a petitioner has no need to rehabilitate or reorganize, courts have recognized that a petition cannot serve the rehabilitative purpose for which Chapter 11 was designed. *SGL Carbon*, 200 F.3d at 166*; see also In re Winshall Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir.1985) ("The purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state.").

45. To determine whether a bankruptcy case was filed in good faith, bankruptcy courts consider a number of factors. *See, e.g.*, *In re Stingfree Technologies Co.*, 427 B.R. 337, 352 (Bankr. E.D. Pa. 2010); *In re Selig*, 1993 WL 764800 (Bankr. M.D. Pa. 1993). Among the factors typically

considered, those relevant in this case include whether: (1) the debtor has no ongoing business or employees; (2) there is no possibility of reorganization; and (3) the debtor filed solely to create the automatic stay. *In re Primestone Invest. Partners L.P.*, 272 B.R. 554, 557 (D. Del. 2002). *See also*, *e.g.*, *In re SB Properties, Inc.*, 185 B.R. 198, 205 (E.D. Pa. 1995). According to the Third Circuit, strategic or suspicious timing of a bankruptcy petition is also an appropriate factor to consider in the bad faith analysis. *See In re Tamecki*, 229 F.3d 205, 208 (3d Cir. 2000).

### III.    ARGUMENT

46.    Based on the totality of the circumstances, this Court should conclude that DFT's bankruptcy case was not filed in good faith, and thus should be dismissed for cause pursuant to section 1112(b) of the Bankruptcy Code.

47.    DFT is little more than a litigious shell of a family trust lacking any discernible economic activity. (*See* ECF No. 17.)  DFT readily admits that its licensing business was insufficient to independently fund its litigious nature. (*See* ECF No. 11 at 3.)  When one of DFT's beneficiaries determined the litigious nature of DFT was no longer worth funding, DFT used bankruptcy as a tool to escape those litigations. (*See* ECF No. 11 at 3.)  Many of DFT's creditors are a direct result of its litigious nature. (*See* ECF No. 17 at 139-143 (e.g., Geer and Herman, P.C., trial counsel to DFT - $143,500.00; Kloss Stenger & LoTempio, TTAB counsel - $129,830.61; Leech Tishman, expert/counsel - $56,647.00; Fox Rothchild LLP, counsel re: Team Angry v. DFT - $24,576.50; Pietragallo Gordon Alfano Boostick & Raspanti, expert report - $17,773.00; Richard Spreng, expert report - $6,200.00, Matthew Fladell, counsel - $5,000.00; Jeff Rovin, expert - $1,000; etc.).)

48.    The filing of a bankruptcy petition in this case does not "preserve going concerns" or "maximize property available to satisfy creditors."  DFT has little to no ongoing business and

11

had little to no ongoing business prior to the litigations at issue. "The purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state." *SGL Carbon*, 200 F.3d at 166*; see also In re Winshall Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir.1985). No amount of breathing space would allow DFT to return to a viable state, because it was never in one to begin with. DFT's income is not sufficient to operate. Moreover, DFT is on record stating that it has no intention to do so, and is seeking a liquidation of its assets.

49. Furthermore, neither the Eastern District Action or the Angry Films litigation impose the threat of a massive monetary judgment against DFT. It cannot be said that staying those litigations preserves going concerns or maximizes the property available to satisfy creditors. The Eastern District Action pertains to NFT's Trademark Application. The Angry Films litigation is a declaratory judgment action concerning whether certain copyrights are in the public domain (i.e., whether DFT even has certain property). To the extent DFT has other assets that could be used to satisfy creditors, those assets are not at issue in the Eastern District Action or Angry Films litigation. At the March 13, 2018 hearing, Mr. Herman made representations to this Court that the value of those other assets are not contingent on the Eastern District Action of the Angry Films litigation. Thus, it is unclear how staying those litigations, that do not impose any threat of a massive monetary judgment against DFT, operates to preserve going concerns or maximize the property available to satisfy creditors.

50. The timing of DFT's petition is also suggestive of bad faith because the bankruptcy petition was filed: (1) approximately two months prior to commencement of trial in the Eastern District Action, (2) after DFT's motions for summary judgment were denied, and (3) after NFT's motions in limine to exclude DFT's experts were granted. (*See* Eastern District

12

Action, ECF Nos. 100-105, 154, 155.) Prior to filing for bankruptcy, DFT was faced with an imminent trial without the benefit of its expert witnesses that could yield an adverse decision. As the Third Circuit recognized in *In re Tamecki*, 229 F.3d 205, 208 (3d Cir. 2000), the court should consider the timing of a bankruptcy petition when determining whether a petition was filed in bad faith. *See also In re Laurel Highlands Found., Inc.*, 473 B.R. 641, 655 (Bankr. W.D. Pa. 2012) ("The filing of the bankruptcy case appears to be nothing more than an attempt by the current management of Laurel to remain in control when faced with the threat that Judge Marsili may grant the renewed request for preliminary injunction."); *Monsour Medical Ctr, Inc. v. Stein,* 154 B.R. 201, 208 (Bankr. W.D. Pa. 1993) ("Review of the facts and circumstances surrounding this case compels the conclusion that the bankruptcy petition was filed as a litigation tactic by one faction of debtor's board of directors in an attempt to reverse setbacks it had suffered in state court."); *In re Business Information Co.*, 81 B.R. 382, 385-86 (Bankr. W.D. Pa. 1988) ("The two parties to this action have been embroiled in intense litigation for almost five (5) years. After substantial delay in discovery, apparently caused by Debtor's distaste for cooperation, a jury trial was held. The verdict of the jury was fully in favor of Gusdonevich. Debtor appealed the verdict, but *did not* seek a stay pending appeal-not until Gusdonevich proceeded to execute upon his judgment. At the hearing on said motion for stay, Debtor advised the District Court that it was financially solvent enough to pay the judgment *as well* as interest and fees immediately if necessary, but was concerned about recouping same from Gusdonevich if Debtor succeeded on appeal. Yet, before the Court could rule, Debtor filed its Petition in Bankruptcy.")

51.    DFT's bankruptcy petition was filed for no other purpose than to gain the protection of the automatic stay, which is improper and in bad faith. *See In re Derma Pen, LLC*, Civ. No. 14-11894, 2014 Bankr. LEXIS 5104 (Bankr. D. Del 2014) (holding bankruptcy petition

13

was not filed in good faith since the bankruptcy debtor only sought the protection of the automatic bankruptcy stay to forestall costly trademark litigation on the eve of trial which the debtor initiated.)  DFT's delay in notifying the Eastern District is further evidence of its bad faith.  DFT demonstrated that it had the ability to file a suggestion of bankruptcy, and did so in the Angry Films litigation the day after it filed its petition.  However, DFT strategically ignored NFT's requests to prepare for trial and didn't respond to requests to discuss its bankruptcy filing and the application of the automatic stay.  Instead, DFT was focused on its plan to hold an auction of its assets before the interested parties were placed on notice.

52. DFT has made a feeble attempt to establish financial distress in this bankruptcy case.  There is no record of any creditor clamoring for payment.  DFT relies on the refusal of one of DFT's beneficiaries to loan DFT additional funds to continue its litigious nature.  (*See* ECF No. 11 at 3.)  DFT's solvency is thus a faucet it can turn on and off at will.  After its summary judgment motion was denied and the case was set for trial, DFT decided that the faucet was better off than on.  Clearly, DFT 's Trustee is merely attempting to avoid the inevitable adverse decisions in its litigations and its bankruptcy filing was a way for it to escape those litigations while maintaining control of the auction process in a clear conflict of interest.

53. Finally, if this Court determines that dismissal of DFT's bankruptcy case is not a just remedy, NFT respectfully requests that the court convert the chapter 11 case to a case under chapter 7 and appoint an impartial case trustee to administer the case to avoid the numerous conflicts of interest of the current trustee Louise Geer and her husband/law partner/ business partner Daniel Herman.

## IV.    CONCLUSION

54. For the reasons set forth herein, NFT respectfully requests that this Court dismiss DFT's bankruptcy case or, in the alternative, convert the chapter 11 case to a case under chapter 7.

Respectfully submitted,

**SANTILLÁN LAW FIRM, PC**

/s/ Edgardo D. Santillán
Edgardo D. Santillán, Esquire
PA ID 60030
Santillán Law Firm, P.C.
775 Fourth Street
Beaver, PA 15009
724-770-1040
412-774-2266 fax
ed@santillanlaw.com

**VOLPE and KOENIG, PC**

John J. O'Malley, Esquire
PA ID No. 68222
30 South 17th Street, Suite 1800
Philadelphia, PA 19103
215-568-6400
JOMalley@vklaw.com

5128832-1