SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

FROSS, ZELNICK, LEHERMAN & ZISSU, P.C.,

        Plaintiff,

-against-

LOUISE GEER, As Trustee of
THE DILLE FAMILY TRUST,

        Defendant.

---

**AFFIDAVIT**
Index No.: 106044/2011

Flint Dille, being duly sworn, deposes and says:

1. That I am a beneficiary of the Dille Family Trust in the above-referenced matter and as such am fully familiar with the facts and proceedings herein. This affidavit is made of my personal knowledge except as to those stated to be made upon information and belief.

2. I have had an opportunity to review the Affidavit of Attorney Lawrence Eli Apolzon ("Attorney Apolzon").

3. Attorney Apolzon indicates in Section A part 3 that there was a referral made by Richard Thompson, an attorney licensed in California. It is my understanding that Mr. Thompson did indeed refer me to Attorney Apolzon.

4. What Attorney Apolzon does not indicate in his Affidavit is that the reason for the referral was my mother's illness and my concerns with regards to intellectual property owned by The Dille Family Trust (DFT).

5. My mother was extremely ill, and she indeed, was dying at that time and I needed legal counsel to provide a chain of title for Buck Rogers, the property of DFT. She had a heart attack on February 3rd and was mostly comatose until February 17th when she died.

6. During the month of February, 2009, things were extremely difficult emotionally for myself as well as my sister, Lorraine Williams.

7. Attorney Apolzon is incorrect with regards to his statement that I consulted him with regards to the Buck Rogers entertainment property.

8. Buck Rogers is not an entertainment property but intellectual property held by the Dille Family Trust and was created by my grandfather.

9. I never told Attorney Apolzon that the Dille Family owned a newspaper in which the original Buck Rogers strip was published. This is factually incorrect as Buck Rogers was a comic strip created by my grandfather's syndicate and this syndicate licensed it for the use of the comic strips created by the syndicate to newspapers and later for the creation of products.

10. My family and my father and my grandfather never owned a newspaper and never had ownership in a newspaper. It is shocking to see an Affidavit sworn and attested to by an attorney who allegedly understood why he was representing me only to learn in an Affidavit that for all the time he represented and handled affairs for me he did not understand the history or genesis of the property he was representing.

11. Attorney Apolzon also indicates in his Affidavit that "They had an ongoing battle for many years with the family of Philip Nowlan who had authored the Buck Rogers strips." This again is also inaccurate. Nowhere in Mr. Nowlan's novellas is the name "Buck" Rogers used.

12. My grandfather created the name "Buck" Rogers. The Buck Rogers concept known to the world was created by my grandfather and his syndicate.

13. Philip Nowlan wrote two novellas which interested my grandfather who hired Philip Nowlan to work with the syndicate and Dick Calkin to create the original Buck Rogers comic strip. At all times Mr. Nowlan was an employee and worked for hire. There had been litigation for many years but this litigation had been settled. Again, it is shocking that Mr. Apolzon, who is suing DFT for collection of his fees, does not even understand the history of DFT and its relationship to Philip Nowlan.

14. I have had an opportunity to review an Exhibit marked as Exhibit "E" which purports to be an engagement letter. It should be noted that I have reviewed my e-mails and I have no record of ever receiving this "letter of engagement." Let me repeat, I have no recollection of receiving it and my records do not indicate that I ever received it and I am sure that I never received a hard copy of this letter.

15. When I originally discussed retaining Attorney Apolzon in February of 2009, I was quite explicit that all fees to his office would have to be capped at $25,000.00 as that was our budget.

16. Attorney Apolzon indicated affirmatively that he understood this and that this would be the rules of engagement for any work done by his firm. That is the reason that the $2,500.00 retainer was sent to Attorney Apolzon, it being 10% of the $25,000.00. It is odd to me that nowhere in Attorney Apolzon's Affidavit does he mention this even though I reviewed this matter with him subsequently in numerous conversations.

17. It should be noted that in April 2009, I began having difficulties with billing issues and began raising these issues at that early juncture with Attorney Apolzon.

18. In Attorney Apolzon's Affidavit in paragraphs 7 and 8 he sets forward that work was done in my behalf and in behalf of DFT. There is no dispute that some work was performed.

19. The dispute is that we were overcharged, that the bills that were received were confusing and unintelligible, and that all the while that we were receiving the bills we were disputing them and bringing them to the attention of Attorney Apolzon and that FZLZ did not perform the services we needed from them and DFT was damaged by FZLZ's conduct.

20. In paragraph 50 of Attorney Apolzon's Affidavit he indicated that the trust never instructed FZLZ to produce the chain of title for distribution. This is a flat out material misstatement. This statement is completely and utterly untrue.

21. The original reason Attorney Apolzon was retained was to produce a chain of title and to clear up the Nowlan problem so that I and DFT could use it in marketing DFT Intellectual Property. The first time I spoke with Attorney Apolzon in February 2009, this was the primary thrust of my conversation with him.

22. As stated above, Attorney Apolzon and I agreed that there was a budget of $25,000.00, which is why I agreed to pay him a $2,500.00 retainer. As the bill became more convoluted and began to run up in cost on a monthly and regular basis I spoke to Attorney Apolzon and complained about the excessive bills and him breaking our agreement regarding the $25,000.00 cap.

23. I had telephone conversations beginning in April 2009 running through September 2010 each month specifically raising the issue of overcharges, confusing bills and him breaking his agreement to cap the cost at $25,000.00. Attorney Apolzon

conceded the bills were overpriced, that they were too high and that he would endeavor to correct these overcharges. This never occurred in a material way.

24. From time to time we received other statements regarding the receipt and disbursements of monies which indicated some monies were put into bills and others were put into retainer accounts but we have not received any kind of final reconciliation of those. To date we still do not have a chain of title from us.

25. A review of the charges of FZLZ clearly indicates that there are multiple duplication of bills in their submitted exhibits G and H. One example: invoice number 1274106 for $1,052.00 is included in both exhibits. So we were billed twice for the same thing. It should also be noted that a review of the bill clearly indicates that the charges were excessively padded. I complained to Attorney Apolzon on an ongoing basis beginning in April of 2009 and on a continuing basis when bills were received.

26. When I spoke with Attorney Apolzon initially and subsequently I made it clear that my mother was extremely ill, she subsequently passed away, and that she was co-trustee with Attorney Arthur Martin, a Chicago attorney.

27. Attorney Apolzon suggests in his Affidavit that the fact that Arthur Martin was the co-trustee of DFT was somehow concealed from him. This is an out and out fabrication by Attorney Apolzon. Attorney Apolzon called Attorney Martin right after initially speaking with me in February, 2009.

28. Just as Attorney Apolzon, after his law firm charged over $80,000.00 for disputed work, does not know even at this juncture that Buck Rogers was a syndicated comic strip by my grandfather and that my grandfather did not own a newspaper, he also seems to have conveniently forgotten things that he was told at the beginning of our relationship.

29. My sister, Lorraine, and myself were clear with Attorney Apolzon throughout his office's representation that any formal action needed to be signed off by Arthur Martin. The fact that he seems not to have known this in his Affidavit is shocking and shows a carelessness and lack of attention to the case. For all the charges asserted he should have been clear on the basic details of the problem.

30. It should be noted that much of Attorney Apolzon's Affidavit is based on assertions that he e-mailed various documents. For some reason FZLZ never saw fit to send many of these communications via U.S. Mail but obviously relied on e-mails, a number of which were not received. It should also be noted that I had a number of telephone conversations with Attorney Apolzon where I, on a regular basis, questioned and disputed the charges accruing from FZLZ. During our conversations Attorney Apolzon acknowledged these problems.

31. With regards to paragraph 22 of Attorney Apolzon's Affidavit, this is a gross and material misrepresentation. Attorney Apolzon's knows that the Trust remitted the check and that it had been improperly handled in their mail. The check was in a Christmas card sent by my sister and FZLZ finally found it and admitted to finding it.

32. Paragraph 23 of Attorney Apolzon's Affidavit is also a gross and material misrepresentation of the facts and completely wrong as with paragraph 22. This is the same check that was sent on Christmas and later acknowledged.

33. With regards to paragraph 24 of Attorney Apolzon's Affidavit, this is also not factually accurate and is undermined by Attorney Apolzon's failure to acknowledge the $15,000.00 check referred to in paragraphs 22 and 23 of his Affidavit. It should also be

noted that all the while I was complaining about the bills containing overcharges, being confusing, being duplicative and being padded.

34. With regards to paragraph 26 of Attorney Apolzon's Affidavit, it is again and out and out fabrication that I made a representation to Attorney Apolzon promising to send anyone a check. At that juncture, Attorney Apolzon knew I was furious with his overcharges and I had made this clear to him.

35. In paragraph 27 of Attorney Apolzon's Affidavit he indicates that when he was instructed to stop doing work that he was surprised and "not withstanding our prior cost estimate he (I) was shocked at the bills." Again Attorney Apolzon is completely disingenuous in his Affidavit. Attorney Apolzon was told about problems with the bills in the beginning of April 2009 for reasons I have already stated. I indicated my disgust on numerous occasions with the sky-rocketing cost of the bills and him breaking our agreement at the $25,000.00 cap only to be mollified by Attorney Apolzon's assurances that the bill would be adjusted which I relied on.

36. It should be emphasized that during my communications with Attorney Apolzon regarding projected costs, it was agreed that costs would be contained within the $25,000.00 budget and it should be noted that at that juncture Attorney Apolzon never quoted a figure of in excess of $300,000.00 for his firm's work in this matter.

37. With regards to paragraph 43 of Attorney Apolzon's Affidavit, this is an out and out, utter fabrication. The statement by Attorney Apolzon that we had not objected to his invoices or complained, which I had done on a constant basis since April of 2009, is a total out and out misrepresentation. Attorney Apolzon knew that I had contested the bills and the ongoing charges since April of 2009, had assured me that he would correct the overcharges and never did.

38. With regards to paragraph 44 of Attorney Apolzon's Affidavit, the Trust through myself beginning in April, 2009, and on an ongoing constant basis, complained about the excessive charges, the duplications, the failure to provide a chain of title, the padding, and the misrepresentations made by Attorney Apolzon and his office. Attorney Apolzon knows that this Affidavit is completely inaccurate and is nothing more than his fantasy.

39. As a result of Attorney Apolzon's office's incompetent representation of DFT, we are currently in a worse position that we were before we retained them as counsel. We are now currently diligently trying to cure all of the problems created by FZLZ.

40. For the foregoing reasons, and for the reasons articulated in the additional papers and pleadings herein, it is respectfully requested that Plaintiff's Motion for Summary Judgment should be denied.

_____
Flint Dille

Sworn to and subscribed before me this 15th day of February, 2013.

_____
Notary Public

See ATTACHED