## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT ("Agreement") dated as of the __ day of _____, 2019, is by and among ROBERT S. BERNSTEIN, TRUSTEE ON BEHALF OF THE BANKRUPTCY ESTATE OF THE DILLE FAMILY TRUST ("Seller"), and Buck Rogers Company, a Pennsylvania limited liability company, ("Buyer").  Buyer and Seller may hereafter be referred to as a "Party" and, collectively, as the "Parties."

### W I T N E S S E T H

**WHEREAS,** On November 28, 2017 ("Petition Date"), the Dille Family Trust ("Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the Western District of Pennsylvania (the "Bankruptcy Court") at Case Number 17-24771-JAD (the "Case").

**WHEREAS**, by Order of Court dated July 25, 2018, the Bankruptcy Court appointed Robert S. Bernstein as Chapter 11 Trustee (the "Trustee") on behalf of the estate of the Dille Family Trust (the "Debtor");

**WHEREAS,** the Seller desires to sell the Debtor's Assets (as hereinafter defined), and the Buyer desires to purchase such Assets pursuant to the terms and conditions of this Agreement and pursuant to an order of the Bankruptcy Court approving such sale ("Sale Order"), under Section 363 of the Bankruptcy Code, such Sale Order to include authority for the assumption and assignment of certain executory contracts as provided herein pursuant to Section 365 of the Bankruptcy Code;

**NOW THEREFORE,** in consideration of the promises, covenants, and other consideration described herein, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows, intending to be legally bound:

### ARTICLE 1
### TRANSFER OF ASSETS AND PURCHASE PRICE

1.1    Assets.        Pursuant to the Sale Order of the Bankruptcy Court approving the same and subject to the terms and conditions of this Agreement, the Seller agrees to sell, convey, transfer, and deliver to the Buyer at the Closing (as hereinafter defined) all right, title and interest of the Debtor in and to all property listed on Schedule 1.1(a), attached hereto (collectively, the "Purchased Assets"), but excluding those certain assets specifically listed on Schedule 1.1(b) attached hereto (the "Excluded Assets").

1.2    Consideration.    The consideration to be paid by the Buyer to the Seller for the Assets shall be [$300,000.00] (the "Purchase Price"), including:

(a)    $300,000.00 (the "Cash Consideration"), comprised of a $100,000.00 deposit already delivered to Seller (the "Deposit"), and a remaining balance of $200,000.00 to be paid at Closing; and

(b)    the Buyer's assumption of the Assumed Liabilities pursuant to Section 1.6 of this Agreement.

1.3    Delivery of Cash Consideration.    Buyer has provided the Deposit to the Seller, which shall be applied toward the Cash Consideration due at Closing. At Closing, Buyer shall pay to Seller the remaining balance of the Cash Consideration in the amount of [$200,000.00] in immediately available funds by wire transfer or certified or cashier's check, as specified by the Seller in written instruction delivered to Buyer.

1.5    Assignment of Contracts, Leases and Other Assets.    Subject to the terms and conditions of this Agreement, as of the Closing, the Seller shall assign and transfer to the Buyer all of the Seller's right, title and interest in and to, and the Buyer shall assume all the rights of the Seller, and, except as provided hereunder, all of the obligations of the Seller for performance from and after the Closing, under the contracts listed on Schedule 1.5, if any, attached hereto (the "Assigned Contracts").

1.6    Assumption of Liabilities.    As partial consideration for the Purchased Assets, the Buyer shall assume, perform, and discharge, by Bankruptcy Court order, pursuant to section 365 of the Bankruptcy Code, from and after the Closing, the following obligations of the Seller (the "Assumed Liabilities"):

(a)    All liabilities and obligations of the Debtor under the Assigned Contracts, including all required cure costs for the Assigned Contracts; and

(b)    All liabilities and obligations of the Debtor arising from or related to the Pending Litigation (identified on Schedule 1.6)

(c)    Any other liability of the Seller or Debtor that Buyer may specifically agree to assume, in writing at Closing, at the request of the Seller.

1.7    Excluded Liabilities. Except for the Assumed Liabilities, the Buyer shall assume no other debts, liabilities, or obligations of the Seller.

1.8     Excluded Assets. The Assets to be conveyed by the Seller to the Buyer hereunder shall not include cash and cash equivalents (such as the Debtor's interests in any deposits) and any asset, tangible or intangible, listed at Schedule 1.1(b), or any asset which is not freely transferable without the consent of a third party, upon the failure to obtain such consent.

## ARTICLE 2
## CLOSING

2.1     Closing.     The transfers and deliveries referred to in Article I hereof (the "Closing") shall take place not later than [*date and time after court approval*] at the law offices of Bernstein-Burkley, PC, 707 Grant Street, Suite 2200, Pittsburgh, Pennsylvania 15219, or by such other means, including facsimile, and at such other time and date as the Seller and the Buyer may in writing designate or such exchange actually occurs (the "Closing Date"). Notwithstanding anything in this Agreement to the contrary, if the Closing is consummated, the effective time of the Closing shall be 12:01 a.m. on the Closing Date.

2.2     Conditions to Closing.

        (a)     The obligations of the Buyer and the Seller under this Agreement are subject to the satisfaction or waiver by the Buyer or the Seller, as applicable, of the following conditions precedent on or before the Closing:

                (i)     The Seller shall have filed a motion or motions for approval ("Sale Motion") under sections 363 and 365 of the Bankruptcy Code of: (1) the sale of the Assets and assumption and assignment of the Assigned Contracts and assumption of the Assumed Liabilities pursuant to the terms of this Agreement and the transactions hereunder (the "Transaction"); (2) the sale of the Assets to the Buyer pursuant to section 363 of the Bankruptcy Code; and (3) the form of this Agreement;

                (ii)    The Bankruptcy Court shall have entered a final and non-appealable Sale Order approving the Transaction and the sale of the Assets to the Buyer, which order shall include a finding that Buyer has purchased the Assets in "good faith" within the meaning of Bankruptcy Code section 363(m); and

                (iii)   No court order by the Bankruptcy Court shall have been entered in any action or proceeding instituted by any person that enjoins, restrains, or prohibits the consummation of the transactions contemplated hereby.

        (b)     The obligations of Buyer under this Agreement are subject to the satisfaction, or waiver by Buyer, of the following further condition's precedent on or before Closing:

    (i) The representations and warranties of the Seller contained herein shall be true in all material respects on and as of the Closing;

    (ii) The Seller shall, in all material respects, have performed all of their respective obligations and agreements and complied with all of its respective covenants contained in this Agreement to be performed and complied with by it on or prior to the Closing;

    (iii) Seller shall have delivered to Buyer Seller's deliverables set forth below;

    (iv) An Event of Force Majeure shall not have occurred during the period beginning on the date of the execution of this Agreement by the parties and ending on the date the Bankruptcy Court enters a Sale Order that is final and non-appealable. An "<u>Event of Force Majeure</u>" as used in this Section shall mean acts of state or governmental action; orders, legislation or regulations; governmental restrictions, priorities or rationing; riots, disturbance or war (declared or undeclared); strikes, lockouts or delay of subcontractors or vendors; embargo, fire, earthquake, flood, hurricane, typhoon, explosion and accident, and such event or events materially change the Assets or the Business in the reasonable estimate of the Buyer.

  (c) The obligations of Seller under this Agreement are subject to the satisfaction, or waiver by Seller, of the following further conditions precedent on or before Closing:

    (i) The representations and warranties of the Buyer contained herein shall be true in all material respects on and as of the Closing;

    (ii) Buyer shall have delivered to Seller Buyer's deliverables set forth below; and

    (iii) The Buyer shall, in all material respects, have performed all of its obligations and agreements and complied with all of its covenants contained in this Agreement to be performed and complied with by it on or prior to the Closing.

2.3 <u>The Seller's Deliverables</u>. At the Closing, the Seller shall deliver to the Buyer any instruments of transfer reasonably required by the Buyer to evidence the transfer of the Assets to the Buyer, including, without limitation, any assignment documents necessary with respect to any Intellectual Property registered, recorded or filed with any governmental

authority, in form suitable for registration, recordation or filing with such governmental authority, in each case duly executed by the Seller.

2.4     The Buyer's Deliverables. At the Closing, the Buyer shall deliver to the Seller the following:

      (a)     The Cash Consideration pursuant to Section 1.2; and

      (b)     Any instruments reasonably required by Seller to evidence Buyer's performance under the Assumed Liabilities; and

## ARTICLE 3
## SELLER'S REPRESENTATIONS AND WARRANTIES

The Seller and Buyer represent and warrant to the Buyer as follows:

3.1     Title.  The Seller has (or will obtain by the Sale Order) authority to convey good and marketable title to all of the Assets.

3.2     Condition and Sufficiency of Assets.     Neither Seller, nor any of its respective directors, officers, employers, agents or representatives has made, or shall be deemed to have made, and no such person shall be liable for, or bound in any manner by, and Buyer has not relied upon and will not rely upon, any express or implied representations, warranties, guaranties, promises or statements pertaining to the Assets, except as specifically set forth in this Article 3.  **THE SELLER HEREBY EXPRESSLY DISCLAIMS AND NEGATES ANY OTHER REPRESENTATION OR WARRANTY, OF ANY KIND OR NATURE, EXPRESS OR IMPLIED, AS TO THE CONDITION, VALUE OR QUALITY OF THE ASSETS AND RELATING TO THE OPERATIONS OF THE DEBTOR, AND SPECIFICALLY DISCLAIM ANY IMPLIED OR EXPRESS REPRESENTATION OR WARRANTY OF MERCHANTABILITY,  OR THE ABILITY OF THE SELLER TO ASSIGN THE ASSETS, OR OBTAIN CONSENTS TO ANY ASSIGNMENT.  ALL OF THE ASSETS ARE BEING SOLD "AS IS", "WHERE IS" AND "WITH ALL FAULTS."**

3.3     Schedules.   All information set forth in the Schedules is materially true, correct, complete and set forth in a manner that is not misleading as of the date of this Agreement.  The information contained in the Schedules shall be deemed to be part of and qualify only those representations and warranties contained in Article 3 or elsewhere in this Agreement that make specified reference to the Schedules.  Unless otherwise indicated, all capitalized terms used in the Schedules shall have the same meanings as in this Agreement.  At all times prior to and including the Closing Date, Seller shall promptly provide Buyer with written

5586145-1

notification of any event, occurrence or other information of any kind whatsoever that materially affects, or may materially affect, the continued truth, correctness or completeness of any representation, warranty or covenant made in this Agreement or the Schedules to this Agreement.  All of such written notifications shall specifically identity any and all of the representations, warranties, or covenants materially affected by the event, occurrence or information that necessitated the giving of such notice.  No such notification or other disclosure shall be deemed (i) to amend or supplement the Schedules to this Agreement or this Agreement or (ii) to affect Buyer's right not to close the purchase of the Assets contemplated hereby because of a breach of a representation, warranty, or covenant made hereunder by Seller, provided however, if Purchase has received such written notice and nonetheless elects to proceed with the Closing, Buyer shall be deemed to have waived any claim against Seller relating to a breach of such a representation, warranty, or covenant.

3.4    <u>Litigation</u>.    Except and unless as set forth on Schedule 1.6 hereto, there are no actions, suits, claims, investigations, hearings, or proceedings of any type pending (or, to the knowledge of Seller, threatened) against Debtor or Seller affecting the Assets.  The litigation matters specifically identified on Schedule 1.6, if any, are referred to in this Agreement as the "Pending Litigation."

3.5    <u>Bankruptcy Case</u>.    Seller warrants that as of the Closing Date, Seller will have complied with the requirements of the Bankruptcy Code and provided to all parties with the right to receive notice of the Bankruptcy Case timely notice of the Bankruptcy Case and the sale of the Assets as required by the Bankruptcy Code.

## ARTICLE 4
## BUYER'S REPRESENTATIONS AND WARRANTIES

The Buyer represents and warrants to the Seller as follows:

4.1    <u>Organization</u>.    Buyer, or Buyer's designated Affiliate, is a limited liability company duly organized and validly existing under the laws of the Commonwealth of Pennsylvania.

4.2    <u>Authority</u>.    The Buyer, or Buyer's designated Affiliate, has all requisite power and authority to enter into this Agreement and to perform its respective obligations hereunder, prior to Closing, the execution, delivery and performance of this Agreement will have been duly and validly authorized and ratified by all necessary corporate and other action on the part of the Buyer and no other proceedings on the part of the Buyer are necessary to authorize this Agreement and the transactions contemplated hereby.

4.3     Validity.     Assuming due authorization, execution and delivery of this Agreement by the Seller, and assuming Bankruptcy Court approval and authorization, this Agreement constitutes a valid and binding obligation of the Buyer, enforceable in accordance with its terms. Upon execution and delivery thereof by Buyer at Closing (and assuming due authorization, execution and delivery thereof by Seller and Bankruptcy Court approval and authorization thereof), this Agreement will be the valid and binding obligation of Buyer enforceable against Buyer in accordance with its terms.

4.4     Litigation.     There are no actions, suits, claims, investigations, hearings, or proceedings of any type pending (or, to the knowledge of Buyer, threatened), at law or in equity, that might affect Buyer's ability to close the transactions contemplated hereby.

4.5     Disclaimer.     The Buyer acknowledges that in making the decision to enter into this Agreement and to consummate the transactions contemplated hereby, the Buyer has relied solely on the basis of its own independent investigation of the Business and the Assets and upon the express written representations, warranties and covenants in this Agreement. Without diminishing the scope of the express written representations, warranties and covenants of the Seller in this Agreement and without affecting or impairing its right to rely thereon, the Buyer acknowledges that (a) it has not relied, in whole or in part, on any information contained in documents, materials or other information provided to it by, or on behalf of, Seller, and (b) Seller is not making any representations or warranties with respect to (i) any such documents, materials or other information, other than, in each case, as set forth in this Agreement or (ii) the value, condition, merchantability, marketability, profitability, suitability or fitness for a particular use or purpose of the Assets.

**ARTICLE 5**
**TAX MATTERS**

5.1    Certain Taxes Other Than Federal, State and Local Income Taxes.    Any transfer, documentary, sales, use, stamp, registration, and other such taxes and fees (including penalties and interest) incurred in connection with this Agreement and arising out of the transfer of the Assets to Buyer, but excluding income taxes of Seller, shall be paid by the Buyer when due, and the Buyer shall, at its own expense, file all necessary tax returns and other documentation with respect to all such transfer, documentary, sales, use, stamp, registration and other such taxes and fees, and, if required by applicable law, the Seller shall join in the execution of any such tax returns and other documentation.  The parties shall cooperate with one another in the preparation of all tax returns, questionnaires, applications or other documents regarding any taxes or transfer, recording, registration or other fees which become payable in connection with the transactions that are required to be filed on or before the Closing.

## ARTICLE 6
## ADDITIONAL COVENANTS

6.1     Assignment of Contracts and Claims.     Notwithstanding any other provision of this Agreement, nothing in this Agreement or any related document shall be construed as an attempt to assign (a) any Contract which, as a matter of law or by its terms, is nonassignable without the consent of the other parties thereto unless such consent has been given or unless such consent is not required by the Bankruptcy Code or (b) any Contract or claim as to which all of the remedies for the enforcement thereof enjoyed by Seller would not, as a matter of law or by their terms, pass to Buyer as an incident of the transfers and assignments to be made under this Agreement. Nothing in this Section shall relieve Seller of its obligations to obtain any consents or make any Cure Payments required for the transfer of the Assets and all rights thereunder to Buyer, nor shall relieve the Buyer of its obligations to pay the Cure Costs paid by Seller.

6.2     Conveyance of Assets.

        (a)     At or prior to Closing, Seller shall use its reasonable best efforts to execute any deeds, bills of sale, instruments of conveyance, assignments, assurances or any other actions or things as are reasonably necessary to transfer, vest, perfect or confirm right, title, interest or ownership (of record or otherwise) of the Assets, including the Intellectual Property, as requested by Buyer.

        (b)     If at any time after the Closing, Buyer is advised that any additional deeds, bills of sale, instruments of conveyance, assignments, assurances or any other actions or things are reasonably necessary to vest, perfect or confirm Buyer's ownership (of record or otherwise), right, title or interest in, to or under any or all of the Assets or otherwise to carry out the intent of this Agreement, Seller shall use its reasonable best efforts to execute and deliver all deeds, bills of sale, instruments of conveyance, assignments and assurances and take and do all such other actions and things as may be reasonably requested by Buyer in order to vest, perfect or confirm any and all right, title and interest in, to and under such rights, properties or assets in Buyer or otherwise to carry out this Agreement.

6.3     Preservation of Assets and No Material Changes in Assets.     Except as otherwise may be ordered by the Bankruptcy Court, Seller shall preserve the Assets in the ordinary and usual course of business, consistent with prior practices. Except as otherwise may be ordered by the Bankruptcy Court, no action shall be taken by Seller that shall effect the Assets in any material adverse respect, or Buyer's use or operation of the assets after the Closing.

6.4     Adequate Assurances.     If Buyer is assuming any contracts as part of this sale transaction, Buyer (or any Affiliate of Buyer designated or to be designated pursuant to Article 4) shall provide in a timely fashion any and all information required by the Bankruptcy Code and the Bankruptcy Court to evidence Buyer's (or any Affiliate of Buyer designated or to be designated pursuant to Article 4 herein) capability of satisfying the conditions contained in Sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code with respect to the Assigned Contracts to be assigned to Buyer.

## ARTICLE 7
## TERMINATION

7.1     Termination.     This Agreement may be terminated at any time prior to the Closing Date:

    (a)     By mutual written consent of the Buyer and the Seller;

    (b)     By the Buyer if the Seller breaches any of its representations and warranties in any material respect herein or fails to perform in any material respect any of its covenants, agreements, or obligations under this Agreement, and any such breach or failure is not cured within fifteen (15) days after written notice from the Buyer; or

    (c)     By the Seller if the Buyer breaches any of its representations or warranties in any material respect herein or fails to perform in any material respect any of its covenants, agreements, or obligations under this Agreement, and any such breach or failure is not cured within fifteen (15) days after written notice from the Seller.

    (d)     By either party if the Motion seeking approval of the sale of the Assets pursuant to this Agreement is denied by the Bankruptcy Court for any reason and such order of court becomes a final order or if the Motion to sell is withdrawn by the Seller.

7.2     Effect of Termination.     In the event of termination of this Agreement by either the Seller or the Buyer as provided in Section 7.1(a), this Agreement shall forthwith become void and have no effect, without any liability or obligation on the part of the Seller or the Buyer, except as set forth hereafter.  In the event of termination of this Agreement by Buyer pursuant to Section 7.1(b), the Deposit shall be returned to Seller and any and all obligations of the parties under this Agreement shall be extinguished.  In the event of termination of this Agreement by Seller pursuant to Section 7.1(c), Seller may elect to retain the Buyer's deposit as liquidated damages and all obligations of the parties under this Agreement shall be extinguished.  In the event of termination of this Agreement by either party pursuant to

Section 7.1(d), the Deposit shall be returned to Seller within ten (10) days of termination and any and all obligations of the parties under this Agreement shall be extinguished.

7.3     Bid Protections. In consideration of Buyer's due diligence, good faith negotiations of and entering into this Agreement and in recognition of Buyer's work in (i) establishing a bid standard or minimum for other interested purchasers, (ii) placing estate property in a sales configuration mode attracting other purchasers to the Assets and (iii) serving, by its name and its expressed interest, as a catalyst for other interested purchasers or bidders, and as reimbursement of Buyer's expenses incurred in connection with the Sale, the Trustee shall pay to Buyer in accordance with Section 7.4: (a) a combined break-up fee and expense reimbursement in the amount of USD $20,000 (the "Bid Protection Amount").  The Bid Protection Amount shall constitute an administrative expense of the kind specified in Section 503(b)(1) of the Bankruptcy Code, payable upon and at the time of closing of an Alternative Transaction.

7.4     Conditions for Payment of Bid Protection Amount. The Bid Protection Amount shall only be payable if approved by the Bankruptcy Court and upon the occurrence of a closing of a sale of the Assets to another party pursuant to and in accordance with the Sale Motion and related Bidding Procedures Motion to be filed by the Trustee with the Bankruptcy Court.

## ARTICLE 8
## GENERAL

8.1     Access to Records and Properties; Assistance.  For a period of one (1) year following the Closing, the parties hereto shall afford each other reasonable access to the financial and tax records of the Debtor or otherwise related to the Assets to (a) complete any financial statements or audits thereof or tax returns, (b) defend any tax disputes or claims or respond to any requests in connection with any tax audits, (c) comply with any legal request or order, (d) defend any disputes, claims, prosecution or litigation, or (e) for any other reasonable purpose.

8.2     Assignment.  Unless agreed upon by the parties in writing, this Agreement and the rights of the parties hereunder may not be assigned (except by operation of law) and shall be binding upon and shall inure to the benefit of the parties hereto and the successors to the parties hereto, provided, however, that Seller and Buyer may assign their respective rights hereunder to any of their respective direct or indirect wholly owned Subsidiary or subsidiaries.

8.3     Signatures.   Signatures on this Agreement delivered by fax or electronic mail shall be considered original signatures for purposes of effectiveness of this Agreement.

8.4     Counterparts.     This Agreement may be executed simultaneously in two or more counterparts which may be delivered by facsimile, each of which shall be deemed an original and all of which together shall constitute but one and the same instrument.

8.5     Fees and Expenses.   Whether or not the transactions herein contemplated shall be consummated, (a) the Seller will pay the fees, expenses and disbursements of the Seller, and its agents, representatives, accountants and counsel incurred in connection with the subject matter of this Agreement and any amendments thereto, and (b) the Buyer will pay the fees, expenses and disbursements of the Buyer and its agents, representatives, accountants and counsel incurred in connection with the subject matter of this Agreement and any amendments hereto.

8.6     Counsel.     Each party hereto warrants and represents that such party has been afforded the opportunity to be represented by counsel of its choice in connection with the execution of this Agreement and has had ample opportunity to read, review and understand the provisions of this Agreement.

8.7     Notices.     Any notice or communication required or permitted hereunder shall be sufficiently given if sent by first class mail, postage prepaid:

  (a)   If to the Seller, addressed to it at:

                            Bernstein-Burkley, PC
                            Attn: Robert S. Bernstein, Esq.
                            707 Grant Street, Suite 2200
                            Pittsburgh, PA 15219
                            rbernstein@bernsteinlaw.com

  (c)   If to the Buyer, c/o its counsel at:   John J. O'Malley, Esq.
                            Volpe and Koenig, P.C.
                            Suite 1800,
                            30 South 17th Street
                            Philadelphia, PA 19103
                            jomalley@vklaw.com

8.8     Opportunity to Investigate.  All of the parties have had an opportunity to investigate and evaluate the Assets being purchased, have relied on independent professional advice

5586145-1

and, therefore, agree that the price to be paid by the Buyer for the Assets is reasonably equivalent value for the Assets.

8.9     Governing Law and Jurisdiction.  THIS AGREEMENT (AND ALL DOCUMENTS, INSTRUMENTS, AND AGREEMENTS EXECUTED AND DELIVERED PURSUANT TO THE TERMS AND PROVISIONS HEREOF (THE "ANCILLARY DOCUMENTS") SHALL BE GOVERNED BY AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE BANKRUPTCY CODE AND TO THE EXTENT NOT INCONSISTENT WITH THE BANKRUPTCY CODE, THE INTERNAL LAWS OF THE COMMONWEALTH OF PENNSYLVANIA WITHOUT GIVING EFFECT TO THE PRINCIPLES OF CONFLICTS OF LAW THEREOF. THE BUYER AND THE SELLER FURTHER AGREE THAT THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER ALL DISPUTES AND OTHER MATTERS RELATING TO (A) THE INTERPRETATION AND ENFORCEMENT OF THIS AGREEMENT OR ANY ANCILLARY DOCUMENT AND (B) THE ACQUIRED ASSETS AND THE ASSUMED LIABILITIES. BUYER CONSENTS TO AND EXPRESSLY CONSENTS TO AND AGREES NOT TO CONTEST SUCH EXCLUSIVE JURISDICTION; *PROVIDED, HOWEVER*, THAT IF THE BANKRUPTCY COURT REFUSES TO ACCEPT JURISDICTION OVER ANY SUCH DISPUTE, THEN ANY STATE OR FEDERAL COURT LOCATED IN THE COUNTY OF INDIANA, COMMONWEALTH OF PENNSYLVANIA, SHALL HAVE JURISDICTION OVER SUCH DISPUTE AND BUYER AND THE SELLER HEREBY CONSENT TO THE JURISDICTION OF SUCH COURT IN ANY SUCH CASE.

8.10    Releases.     Except for those obligations and liabilities created hereunder, the Seller, on behalf of himself as Trustee and on behalf of the Estate, and on behalf of their predecessors, successors, assignors, and assigns, and their respective parents, subsidiaries, affiliates, and attorneys and anyone claiming by or through the Estate and the Bankruptcy Trustee, on the one hand, and the Buyer, its predecessors, successors, assignors, and assigns, and their respective parents, subsidiaries, affiliates, and attorneys, on the other hand, hereby mutually release, acquit, and forever discharge each other from and against any and all claims, demands, damages, actions, causes of action, expenses (including attorney's fees and costs), whether known or unknown, suspected or unsuspected, of any kind or nature whatsoever, whether in contract, tort, intellectual property infringement, law, equity, or otherwise, including but not limited to in any way arising from or related to the bankruptcy proceedings, the NFT Litigation (defined on Schedule 1.6), the Patent Office Proceedings (defined on Schedule 1.6) or the TAF Litigation (defined on Schedule 1.6).

8.10    Conflicts.    In case any provision in this Agreement shall conflict with any part of the Sale Order, the terms of the Sale Order shall control and shall be given precedence by the parties hereto over any such conflicting term in this Agreement.

8.11 <u>Captions</u>.    The captions in this Agreement are for convenience only and shall not be considered a part hereof or affect the construction or interpretation of any provisions of this Agreement.

8.12 <u>Entire Agreement</u>.    This Agreement and the documents delivered pursuant hereto constitute the entire agreement and understanding between the Seller and the Buyer and supersede any prior agreement and understanding relating to the subject matter of this Agreement. This Agreement may be modified or amended only by a written instrument executed by the Seller and the Buyer acting through their duly elected officers.

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the day and year first above written.

**THE SELLER.**

**Robert S. Bernstein, as Trustee for the bankruptcy estate of the Dille Family Trust**

By:_____
Name: Robert S. Bernstein

Title: Trustee for Estate of Dille Family Trust



**THE BUYER:**

**Buck Rogers Company**


By:_____
Name: Brian McDevitt

Title: Sole and Managing Member

5586145-1

## SCHEDULE 1.1(a)

## ASSETS

(a) All intellectual property rights throughout the world, including but not necessarily limited to copyrights, including registrations, applications for registration, renewals and extensions thereof, characters, translations, trademarks, common law marks, associated goodwill, books and records, generally described as derived from, based on, related to or arising from the character "Buck Rogers," including United States common law rights and United States trademark application rights in the "Buck Rogers" mark.

(b) All personal property, including but not limited to certain specimens, exemplars, business records and documents associated with or related to the use, marketing, sale or licensing of Debtor's intellectual property rights;

(c) All rights under all executory contracts and agreements that the Buyer designates for assumption and assignment;

(d) Customer lists, sales and marketing materials, mailing lists, marketing lists, employee lists, and related information;

(e) All causes of action, choses of action and rights of recovery, and counterclaims and setoff rights, including with regard to the Pending Litigation, and including any causes of action arising under Chapter 5 of the Bankruptcy Code;

(f) All intangible assets and goodwill of the Debtor;

(g) All books and records of the Debtor; and

(h) All other assets and rights associated with or used by the Debtor that are not specifically excluded.

5586145-1

## SCHEDULE 1.1(b)

## EXCLUDED ASSETS

(a)  All cash and cash equivalents;

(b)  All claims and causes of action of Seller against Buyer for Buyer's breach of this Agreement or any other agreement or instrument entered into in connection with the Transaction.

## Schedule 1.5

## Assumed Contracts or Leases

NONE.

## Schedule 1.6

### Debtor/Seller Pending Litigation

The Debtor is party to the following currently pending litigation cases:

      1.      That certain litigation captioned Dille Family Trust v. Nowlan Family Trust, pending in the United States District Court for the Eastern District of Pennsylvania at Case No. 15-06231 (the "NFT Litigation").

      2.      That certain litigation captioned Team Angry Filmworks, Inc. v. Louise A. Geer, Trustee of the Dille Family Trust, pending in the United States District Court for the Western District of Pennsylvania at Case No. 15-1381 (the "TAF Litigation").

      3.      Those certain proceedings and applications pending before the U.S. Patent and Trademark Office in which either Debtor or Nowlan Family trust are named parties or otherwise involved of record regarding the common law rights and applications in the Buck Rogers mark (the "Patent Office Proceedings").