## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **DILLE FAMILY TRUST,** | ) | Bankr No. 17-24771-JAD |
| | ) | |
| Debtor. | ) | |
| _____ | X | Chapter 11 |
| | ) | |
| **DON MURPHY, LORRAINE DILLE** | ) | |
| **WILLIAMS, ROBERT NICHOLS** | ) | Related to ECF No. 453 |
| **FLINT DILLE, and TEAM ANGRY** | ) | |
| **FILMWORKS, INC.,** | ) | Also related to ECF Nos |
| | ) | 252, 277, 331, 377, 411, |
| Movants, | ) | 413, 416, 449, 450, 453, |
| | ) | 461, 491, 515, 523, 526 |
| | ) | & 537 |
| - v - | ) | |
| | ) | |
| **ROBERT S. BERNSTEIN, Chapter** | ) | |
| **11 Trustee, LOUISE A. GEER,** | ) | |
| **Esquire, NOWLAN FAMILY** | ) | |
| **TRUST, and DILLE FAMILY** | ) | |
| **TRUST,** | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | X | |

## MEMORANDUM OPINION

The matter before the Court is an *Expedited Joint Motion to Dismiss the Chapter 11 Case for Cause* (the "Motion to Dismiss") filed by Don Murphy, Lorraine Dille Williams, Robert Nichols Flint Dille, and Team Angry Filmworks, Inc.

Pursuant to the Motion to Dismiss, the movants make a number of contentions including the claim that the Dille Family Trust is not a "business

00025941

trust" and is therefore ineligible to be a debtor in bankruptcy pursuant to 11 U.S.C. § 109(d).

Objections have been lodged against the Motion to Dismiss by: Robert S. Bernstein in his capacity as Chapter 11 Trustee, Louise A. Geer (who is the non-bankruptcy trustee of the Dille Family Trust), the putative debtor Dille Family Trust, and the Nowlan Family Trust. These parties contend that the debtor is a "business trust" and, as such, the debtor is eligible for relief.

The Motion to Dismiss is a core proceeding over which this Court has the requisite subject matter jurisdiction and authority to enter a final judgment. See 28 U.S.C. §§ 157(a), 157(b)(1), 157(b)(2)(A), 157(b)(2)(O), and 1334(b).   For the reasons that are set forth below, the Court concludes that the Dille Family Trust is not a "business trust" and that this bankruptcy case must be dismissed.

## I.
## Background

This case is a saga.  After much litigation before the United States Patent & Trademark Office's Trademark Trial and Appeal Board, the United States District Court for the Central District of California, the United States District Court for the Eastern District of Pennsylvania, and the United States District Court for the Western District of Pennsylvania, the legal controversies concerning the Dille Family Trust found itself on this Court's docket when the Dille Family Trust filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on November 28, 2017.

00025941                                    -2-

Since the Dille Family Trust was in the throes of litigation when it sought bankruptcy protection, its adversaries went on the offensive in this bankruptcy case and sought either relief from the automatic stay to complete the non-bankruptcy litigation that was consuming the debtor, and/or dismissal of this bankruptcy case alleging a myriad of "cause" including allegations to the effect that: (1) the Dille Family Trust is an ordinary trust and not a "business trust" thereby rendering it ineligible for bankruptcy relief, and (2) this bankruptcy case was not filed in "good faith" since it was allegedly filed as a litigation tactic to forestall ongoing litigation.[1]

By way of background, the Dille Family Trust purports or alleges that it owns copyrights, trademarks and other intellectual property rights relative to the fictional comic character known as the 25th century space explorer "Buck Rogers" (also known as "Anthony Rogers").

The intellectual property rights claimed by the Dille Family Trust include the rights relating to a novella entitled *Armageddon 2419 A.D.*, where the character "Anthony Rogers" first appeared. This novella was allegedly written by Phillip Francis Nowlan in 1928 or 1929  while he was under contract with either John F. Dille or his companies (John F. Dille Co., National News Service and/or National

---

[1] See e.g., ECF No. 26 (*Emergency Motion for Relief From Stay filed by Team Angry Filmworks*); ECF No. 81 (*Motion to Dismiss Case filed by Don Murphy and Team Angry Filmworks*); ECF No. 90 (*Motion to Dismiss Case, or in the Alternative to Convert to Chapter 7 filed by Don Murphy and Team Angry Filmworks*); and ECF No. 103 (*Supporting Response to the Motion to Dismiss or Convert filed by the Nowlan Family Trust*).

00025941                                        -3-

News Syndicate).[2] Alternatively, it has been contended in pleadings that the character "Anthony Rogers" or "Buck Rogers" was created by Dille and not by Nowlan.

These circumstances led to a dispute between Nowlan and Dille as to rights to the intellectual property. However, it appears that in 1942, Mr. Nowlan's estate released and assigned such rights and interests in the "Buck Rogers" and "Buck Rogers in the 25th Century" intellectual property to Dille. Thereafter, and through the years that followed, these intellectual property rights were transferred between members of the Dille family (including Robert C. Dille, who is the son of John F. Dille) or to companies owned by them.

On August 16, 1979, the Dille Family Trust was created. On that same date, it has been alleged that "Buck Rogers" and related trademark rights were conveyed to the Dille Family Trust. Approximately a year later copyrights were also alleged to have been assigned to the Dille Family Trust. Other assignments

---

[2] Much of the background allegations regarding "Buck Rogers," *Armageddon 2419 A.D.*, and the litigation between the Dille Family Trust, Don Murphy, and Team Angry Filmworks is set forth in the opinions of former Chief U.S. District Judge Joy Flowers Conti which are found at: Team Angry Filmworks v. Geer, 171 F. Supp.3d 437 (W.D. Pa. 2016) and  Team Angry Filmworks, Inc. v. Geer, 214 F. Supp. 3d 432 (W.D. Pa. 2016).  As to the background and allegations regarding the Nowlan Family Trust, it is set forth in the opinion of the Trademark & Trial Board which is found at Dille Family Tr. v. Nowlan Family Tr., 2015 WL 6121770 (Opinion dated September 25, 2015, Trademark Tr. & App. Bd.) and in the opinion of U.S. District Court Judge Wendy Beetlestone which is found at: Dille Family Tr. v. Nowlan Family Tr., 276 F. Supp. 3d 276 (E.D. Pa. 2017).  Pursuant to Fed.R.Evid. 201, and by consent of the parties, the Court takes judicial notice of the allegations of the parties in these proceedings, as well as  the findings and conclusions of the respective courts adjudicating matters therein.

to the Dille Family Trust have also occurred, but the record in that regard is not fully developed. Inasmuch as this description is for background purposes, the specifics of various intellectual property assignments are not outcome determinative to the instant matter before this Court.

For reasons that are unknown to the Court, certain registrations of the "Buck Rogers" trademark were cancelled in 2011. Notwithstanding the cancellation, the Dille Family Trust contended that it continued to use the trademarks in commerce. In fact, the Dille Family Trust contended that in 2009 it had filed applications with the United States Patent & Trademark Office relative to certain marks and classes of use.

In January of 2008, the Nowlan Family Trust filed an application with the United States Patent & Trademark Office seeking registration of the "Buck Rogers" mark based upon an intent to use. The Dille Family Trust opposed the application, and in 2015 the opposition was overruled by the Trademark Trial & Appeal Board because the Dille Family Trust could not "demonstrate its proprietary interest in the asserted mark." See Dille Family Tr. v. Nowlan Family Tr., 2015 WL 6121770 at *8 (T.T.A.B., September 25, 2015). The Dille Family Trust then filed suit against the Nowlan Family Trust in the Eastern District of Pennsylvania seeking to overturn the decision of the Trademark Trial & Appeal Board.

While this  matter was making its way through the federal court system, Team Angry Filmworks, Inc. filed suit against the Dille Family Trust and its

00025941                                                -5-

trustee, Louise A. Geer, in the United States District Court for the Central District of California.[3]

Team Angry Filmworks is a film production company owned by Don Murphy. According to the lawsuit filed by Team Angry Filmworks against Dille Family Trust and Ms. Geer, Mr. Don Murphy is a "well known motion picture producer whose production credits include 'Natural Born Killers,' 'The League of Extraordinary Gentlemen,' 'From Hell' and 'The Transformers' motion picture franchise. Motion pictures on which Mr. Murphy has acted as a producer have generated in excess of four billion dollars in box office revenues." See Team Angry Filmworks, Inc. v. Geer, 214 F. Supp. 3d 432, 436 (W.D. Pa. 2016).

The lawsuit filed by Team Angry Filmworks was ultimately transferred to the Western District of Pennsylvania because the non-bankruptcy trustee for the Dille Family Trust, Louise A. Geer, resides in New Castle, Pa.

The gravamen of the Western District litigation is a claim by Team Angry Filmworks that "Buck Rogers" and *Armageddon 2419 A.D.* entered the public domain in the United States in 1956. The claim by Team Angry Filmworks also includes a contention that these marks or works entered the public domain worldwide in 2010. The lawsuit also alleges that Team Angry Filmworks received various threats and/or demands by counsel for the Dille Family Trust, Mr. Daniel Herman (who is also the spouse of Louise A. Geer), which included various

---

[3] "Does 1-10, inclusive" were also listed as co-defendants in this action.

copyright infringement claims.[4]

As such, the litigation commenced by Team Angry Filmworks included causes of action seeking a declaration that the marks and works are in the public domain and that the same may be used by Team Angry Filmworks as part of its commercial ventures and film productions. The Western District litigation also sought injunctive relief enjoining the Dille Family Trust and Ms. Geer from interfering with Team Angry Filmworks use of the "Buck Rogers" and *Armageddon 2419 A.D.* intellectual property in Team Angry's projects, and attorneys fees and costs pursuant to 17 U.S.C. § 505.

The Dille Family Trust's litigation against the Nowlan Family Trust in the Eastern District progressed to the point in which the case was ready for trial. In fact, trial was scheduled to begin on February 5, 2018.  The litigation against Team Angry Filmworks in the Western District also progressed past the pleadings stage and entered into the discovery phase.  Efforts at mediation also failed, and the case proceeded.

With the trial looming in the Eastern District, it appears that the Dille Family Trust's ability to fund payment of the fees and expenses of its legal counsel ended. Apparently, the beneficiaries of the Dille Family Trust are the surviving children of Robert C. Dille (i.e., Robert Nichols Flint Dille and Lorraine Dille

---

[4] The Court takes judicial notice of the allegations contained in the *Third Amended Complaint* filed at Team Angry Filmworks, Inc. v. Louise A. Geer, as Trustee of the Dille Family Tr., No. 2:15-cv-01381-JFC (W.D. Pa.)(ECF No. 73).

Williams). The latter, Lorraine Dille Williams, was lending the trust monies enabling the Dille Family Trust to mount its litigation efforts, despite the fact that the trust on its own was not generating enough income to pay for such expenses. However, Lorraine Dille Williams ultimately ceased funding the litigation citing, among other things, alleged irregularities by either Ms. Geer or Mr. Herman, or their firm Geer and Herman, P.C. and other related entities.

Without funding for the litigation, the Dille Family Trust filed for Chapter 11 relief on November 28, 2017. The effect of the filing was that all litigation was stayed and, instead, the parties sharpened their litigation arrows before this Court.

By way of example, upon the filing of this bankruptcy case, the Dille Family Trust sought to engage an auctioneer to sell the intellectual property rights "free and clear" of competing interests. Naturally, the Nowlan Family Trust and Team Angry Filmworks opposed such efforts because these parties claimed a right to utilize the intellectual property.

Team Angry Filmworks also moved to dismiss this bankruptcy case as a "bad faith" filing, contending that the debtor did not belong in Chapter 11 because it had no meaningful business operations and because the bankruptcy filing was merely a litigation tactic designed to avoid the various non-bankruptcy lawsuits.

Team Angry Filmworks also contended that dismissal was warranted because the debtor was an ordinary trust as opposed to a "business trust" thereby

rendering it ineligible for bankruptcy relief pursuant to 11 U.S.C. § 109(d).  As an alternative request for relief, Team Angry Filmworks also contended that these circumstances provided ample "cause" to grant Team Angry relief from the automatic stay pursuant to 11 U.S.C. §362(d)(1) for it to prosecute the Western District lawsuit.

Similarly, the Nowlan Family Trust filed its own request for relief from the automatic stay adopting the arguments raised by Team Angry Filmworks.

Around this time, the Dille Family Trust filed its proposed Chapter 11 Plan and Disclosure Statement. The gist of the plan was to liquidate the intellectual property interests.

Hearing was had on the Disclosure Statement, where the various parties (including the Nowlan Family Trust, Team Angry Filmworks, Robert Nichols Flint Dille and Lorraine Dille Williams) appeared and raised many of the same issues that had been permeating this case, including challenges to the debtor's eligibility as a "business trust" and challenges regarding the good faith filing and prosecution of this Chapter 11.  The Nowlan Family Trust and Team Angry Filmworks also pressed their motions for relief from stay and for dismissal of the bankruptcy case.  No decision was made at that time regarding these dueling motions because the parties argued that questions of fact remained.

The Court then scheduled an August 21, 2018 trial on the motions for relief from stay and for dismissal of the case.  The Court also authorized the parties to

undertake discovery in advance of trial.

During the discovery period, the Dille Family Trust failed to comply with discovery requests resulting in the filing of various motions to compel against the debtor. At a July 25, 2018 hearing it became evident that not only was the failure to produce discovery willful, but that there were many other inherent problems with this Chapter 11 case. The result was that this Court exercised its discretion and appointed a Chapter 11 Trustee instead of dismissing the case at that time. In this regard, the Court found and determined as follows:

> It is clear and convincing that the above captioned Chapter 11 case is not making any meaningful progress towards a successful reorganization. In fact, the undisputed record of this case is that while the debtor has been a debtor-in-possession, it

> 1.   Has no business operations;

> 2.   Has no meaningful income;

> 3.   Is liquidating as opposed to reorganizing;

> 4.   Has incurred administrative expenses in the form of professional fees and yet has no liquid assets available to satisfy them;

> 5.   Has incurred administrative expenses in the form of professional fees, yet does not identify them in its monthly financial reports (as the line item for professional fees incurred reflects nothing in each report on file);

> 6.   Has invoked the automatic stay for the primary purpose of avoiding a trial regarding the debtor's alleged interest in various intellectual property;

> 7.   Has replaced the non-bankruptcy forum litigation

costs with the costs associated with the litigation that has consumed this bankruptcy case (namely, whether the debtor is eligible for bankruptcy relief; whether this case was filed in good faith; whether the debtor may sell the disputed assets; and whether the automatic stay should be lifted as to the entities having a competing interest in the disputed property);

8.   Has obfuscated lawful discovery requests propounded by litigants who have challenged the debtor's eligibility to be a debtor in bankruptcy, who have challenged the good faith basis of the debtor's commencement of this case (i.e., have contended that the bankruptcy is nothing but a litigation tactic), and who have challenged the debtor's ability to sell the disputed property interests;

9.   Has provided affidavits which are evasive or incomplete or misleading in support of defective answers to discovery;

10.   Has ignored and/or obfuscated directives of this Court to produce documents responsive to lawful discovery requests and has provided no convincing arguments excusing such failures;

11.   Has improperly and without appropriate excuse withheld documents responsive to discovery requests;

12.   Cavalierly claimed that its woefully inadequate responses to discovery were "un-important" or "no big deal" or something to that effect, despite the fact that the debtor is a fiduciary, has a duty to answer discovery and despite the fact that the debtor bears the burden of proving that its bankruptcy case is one that has been filed and prosecuted in good faith;

13.   Is unable to pay a monetary sanction as a result

of its failure to answer lawful discovery as the debtor has no liquid assets;

14.    Has not demonstrated to the Court and has not convinced the Court that the debtor's contumacious failure to respond to discovery requests will cease;

15.    Despite the fact that it acknowledged the existence of the ownership dispute(s) as to intellectual property rights at issue in this case, has improperly sought to pursue a "free and clear" sale of the disputed or alleged rights only to be "corrected" once the Court and certain parties-in-interest questioned the legitimacy of such efforts;

16.    Has listed on the internet various assets for sale without first obtaining prior approval of this Court;

17.    Has consulted or utilized the services of counsel (Mr. Herman) who has not been retained by an order of this Court, and who may have a conflict of interest (as his firm is an alleged pre-petition creditor and his spouse is both an alleged trustee of the Dille Family Trust and owner of a related entity that is alleged to have entered into a licensing agreement with the debtor); and

18.    Admitted that the beneficiaries of the debtor-trust are deadlocked, and one 50% beneficiary received no notice and did not consent to the filing of the instant bankruptcy.

In light of all of the circumstances of this case, the record is clear and convincing that "cause" supports the appointment of a Chapter 11 Trustee in this case pursuant to 11 U.S.C. §§ 1104(a)(1) and (a)(2).

Such appointment is not only appropriate given the aforementioned items of "cause," it is also appropriate given the acrimony and pervasive litigation that has consumed this case. See

e.g. In re Marvel Entertainment Group, Inc., 140 F.3d 463 (3d Cir. 1998)(appointment appropriate given high level of acrimony).

In rendering its decision directing the appointment of a Chapter 11 Trustee, the Court duly considered the debtor's suggestion that an examiner be appointed in lieu of the appointment of a trustee.

However, it is unlikely that the costs associated with the appointment of an examiner would be any less than that of a trustee. In addition, an examiner's investigation will do nothing but further add an element of delay to this case. Moreover, an examiner lacks the requisite powers and duties of management, which is necessary to move this case forward in a Chapter 11.

Finally, the primary litigants in this case support the appointment of a Chapter 11 Trustee, even noting that such appointment could have the salutary effect of promoting the possibility of settlement for the benefit of all constituencies.

For all of these reasons, an Order shall be entered that directs the Office of the U.S. Trustee to immediately appoint a Chapter 11 Trustee.

See In re Dille Family Tr., 2018 WL 3629650 (Bankr. W.D. Pa., July 25, 2018).

Attorney Robert S. Bernstein was duly appointed Chapter 11 Trustee in this case. In this regard he has exercised his duties admirably and consistent with his fiduciary duties.

Despite the appointment of the Chapter 11 Trustee, the trial of the motions to dismiss and relief from stay remained on the Court's calendar for August 21, 2018. On or about that date, the Chapter 11 Trustee and Team Angry Filmworks reached a tentative agreement whereby the Team Angry motions were withdrawn without prejudice, and the Chapter 11 Trustee and Team Angry Filmworks proposed a Chapter 11 Plan to be funded through the development and

monetization of the intellectual property. The Nowlan Family Trust was also granted relief from stay to complete the Eastern District litigation.

Thereafter, the Chapter 11 Trustee filed a motion seeking approval of the Team Angry deal pursuant to Fed.R.Bankr. 9019.  This deal, however, was opposed by the Nowlan Family Trust, Ms. Geer, Mr. Herman and others.  Geer and Herman then filed their own competing plan whereby Geer and Herman would allegedly control the monetization of the "Buck Rogers" related intellectual property for themselves and certain creditors.[5]

A hearing was then held on November 27, 2018. At that hearing, the Chapter 11 Trustee observed, in so many words, that this case is a difficult case and that the negotiations have been fluid.

Specifically, much to the surprise of Team Angry Filmworks, the Chapter 11 Trustee advised the Court at the November 27, 2018 hearing that the Chapter 11 Trustee was exercising his business judgment and elected to abandon the Team Angry Filmworks proposal and forge ahead with a plan agreed upon by the Nowlan Family Trust, Ms. Geer, and Mr. Herman.

Mr. Bernstein's analysis of the competing proposals was that the joint proposal of Nowlan Family Trust and Geer & Herman was a better offer for

---

[5]  The beneficiaries of the trust, Robert Nichols Flint Dille and Lorraine Dille Williams, contend that Geer and Herman's efforts to acquire the intellectual property rights violate applicable fiduciary duties.  Nothing contained in this *Memorandum Opinion* should be construed as a ruling, either positively or negatively, as to this issue.

creditors because it proposed remitting to the bankruptcy estate $500,000 for creditors.  It was represented that this sum would pay creditors a dividend of approximately fifty cents on the dollar.  It has been stated in these proceedings that trust beneficiaries (Ms. Wiliams and Mr. Dille) would receive nothing on account of their interests under this new proposal.

Obviously Team Angry Filmworks and Don Murphy were dismayed at this turn of events.  Ms. Williams and Mr. Flint Dille were also dismayed.  As such, at the November 27, 2018 hearing, counsel for Team Angry Filmworks orally renewed the Team Angry motion to dismiss.

At the November 27th hearing, the Chapter 11 Trustee was then directed to file his amended plan and the colloquy of that hearing reflected not only the recognition that debtor eligibility remained a live issue in this case, but also that a determination of this issue would be a precondition to the confirmation of any plan.

Thereafter, on December 11, 2018, the expedited Motion to Dismiss was filed by Team Angry Filmworks, Don Murphy, Lorraine Dille Williams, and Robert Nichols Flint Dille.

This written motion renewed the challenge to the debtor's eligibility to be a debtor, and argued that the Dille Family Trust is not a "business trust." This motion also reasserted the claims of "bad faith" that were contained in the prior motion. The motion also asserted various claims that Ms. Geer and Mr. Herman

committed various misdeeds in connection with both their representation of the Dille Family Trust and the filing and prosecution of this bankruptcy case.

A hearing on the Motion to Dismiss was held on January 7, 2019. At that hearing, argument was spirited by all parties including the Chapter 11 Trustee and Team Angry Filmworks. In addition, Lorraine Dille Williams appeared *pro se* and counsel for Robert Nichols Flint Dille appeared. At the hearing, these beneficiaries reported to the Court that they lost confidence in Ms. Geer and are concerned that no estate fiduciary is looking out for the interests of the beneficiaries.

The Court then took this matter under advisement and ordered supplemental briefing. Briefing was completed on February 5, 2019, and thereafter the Chapter 11 Trustee filed a slew of motions including: a motion to convert this case to a Chapter 7 liquidation, a motion to sell assets, and a motion for bid procedures.

The gist of these motions is that given all of the acrimony, and the costs attendant to litigation, the Trustee believes that a reorganization is neither possible nor likely. The Trustee would therefore like to sell the intellectual property and other assets for the benefit of creditors and convert this case to a Chapter 7 liquidation. The putative stalking horse bidder of the assets is an entity owned or controlled by one of the co-trustees of the Nowlan Family Trust, and the effect of such sale is to result in no distribution on account of the beneficial

00025941                                    -16-

interests of Lorraine Dille Williams and Robert Nichols Flint Dille.  The current offering price for the assets in question is $300,000, and such price will also result in less than full payment to unsecured creditors whose claims listed on the Court's official claims register exceed $4.8 million.[6]  In fact, it appears that a substantial share of the proceeds would be paid to administrative expense creditors because the Chapter 11 Trustee's fees alone exceed $143,000 given all of the acrimony in this case.[7]

Suffice to say, Team Angry Filmworks, Don Murphy, Lorraine Dille Williams, and Robert Nichols Flint Dille have objected to the flurry of motions filed by the Chapter 11 Trustee.  In their objection, these parties contend that the motions are an impermissible attempt to extend the litigation regarding the Motion to Dismiss, and that the Court should simply grant the Motion to Dismiss.[8]

---

[6]  The Court notes that a number of these claims are disputed, and nothing in this *Memorandum Opinion* purports to adjudicate the merits of the filed claims.

[7]  The Chapter 11 Trustee and the court appointed mediator, Retired U.S. Bankruptcy Judge Judith K. Fitzgerald, previously filed motions requesting that their allowed administrative fees and expenses in this case be reduced to judgment against the Dille Family Trust.  Finding such relief appropriate, and there being no objection by any party in interest, the Court has granted the requests by order dated February 15, 2019.  Such judgments survive this bankruptcy since nothing in 11 U.S.C. § 349 precludes their application post-dismissal. In fact, 11 U.S.C. § 349(b) provides that only judgments under 11 U.S.C. §§ 522(I), 542, 550, and 553 are vacated upon dismissal.  Judgments relating to fees and expenses of estate professionals do not fall within these provisions of the Bankruptcy Code.  Rather, they fall under 11 U.S.C. § 330.

[8]  The tone of the response of Team Angry Filmworks and Mr. Murphy is that such parties have heartburn over the fact that the Motion to Dismiss is being decided more than 15 days after the initial hearing on the Motion to Dismiss. See 11 U.S.C. § 1112(b)(3).  The Court finds it interesting that these parties ignore the fact that additional briefing was required by the

(continued...)

Having duly considered the record and arguments of counsel, this Court
concludes that the Dille Family Trust is ineligible to be a debtor in bankruptcy.
As such, the Court need not address the merits of the other items complained by
the movants. The Court's analysis of the eligibility issue is set forth below.

## II.
## Burden of Proof

Beginning with the allocation of the burden of proof, courts have held that
the burden of proof in establishing eligibility for bankruptcy relief lies with the
party filing the bankruptcy petition, which in this case is the Dille Family Trust.
See In re Secured Equip. Tr. of E. Air Lines, Inc., 38 F.3d 86, 89 (2d Cir. 1994);
In re Snider, Bankr. S.D. Ohio 1989)(opinion by R. Guy Cole, Jr., J.)(citing In re
Rott, 73 B.R. 366, 371 (Bankr. D.N.D. 1987)); see also In re Gurney's Inn Corp.
Liquidating Tr., 215 B.R. 659, 660 (Bankr. E.D.N.Y. 1997)(citing In re Westgate
Village Realty Tr., 156 B.R. 363, 364 (Bankr. D. N.H. 1993)).

This case, however, is in somewhat of a unique position because a Chapter
11 Trustee has been appointed.  Because the Chapter 11 Trustee stands in the

---

[8](...continued)
Court since the parties' papers were less than robust. See 7 Collier on Bankruptcy at para.
1112.04[3][b](acknowledging that post trial briefing extends the 15 day decisional period).
Moreover, a fair review of the substance of the motion to dismiss litigation is that Team Angry
and Mr. Murphy effectively waived the 15 day decisional time period set forth 11 U.S.C. §
1112(b)(3) by holding the dismissal litigation in abeyance for several weeks after they withdrew
their initial request for dismissal.  That is, the instant Motion to Dismiss is nothing but a
continuation of the initial motion to dismiss that Team Angry and Mr. Murphy elected to
voluntary "shelve."  In addition, the Chapter 11 Trustee filed a host of motions, which, in-turn,
related to the relief requested in the Motion to Dismiss, thus extending the decisional deadline.

proverbial shoes of management of the debtor, and because the Chapter 11 Trustee is advocating for debtor eligibility, this Court concludes that it is appropriate to allocate the burden of proof to the Chapter 11 Trustee.  This holding is consistent with <u>Commodity Futures Trading Comm. v. Weintraub</u>, 471 U.S. 343 (1985), where the United States Supreme Court noted that an inanimate entity "must act through agents." <u>Commodity Futures</u>, 471 U.S. at 378.

Of course, a traditional trust is not an entity in and of itself.  Rather, it is a fiduciary relationship. <u>Americold Realty Tr. v. ConAgra Foods, Inc.</u>, 136 S.Ct. 1012, 1016 (2016)).  It would therefore appear that it is also appropriate to allocate the burden of proof to the non-bankruptcy trustee (Louise Geer, Esq.). Accordingly, since both the Chapter 11 Trustee and Ms. Geer are advocating for "debtor" status of the Dille Family Trust, the Court concludes that both parties have the burden of proof.

### III.
### Business Trusts and Section 109 Eligibility

Turning to the relevant statutes that guide this Court's rule of decision, 11 U.S.C. § 109(d) provides, in pertinent part, that only "a person ... may be a debtor" under Chapter 11.  The term "person" is further defined in the Bankruptcy Code as including an "individual, partnership, and corporation..." <u>See</u> 11 U.S.C. § 101(41).  Also, the term "corporation" is limited to certain business entities including a "business trust." <u>Id</u>. at § 101(9).  Weaving these terms together, courts have concluded that only valid "business trusts" may be eligible for bankruptcy

relief, while ordinary non-business trusts are not. See e.g. In re Blanche Zwerdling

Revocable Living Tr., 531 B.R. 537, 542-546 (Bankr. D.N.J. 2015).

The rationale for such a conclusion lies not only in the language of the

statutes set forth above, but also in the history behind them. As the court noted

in Gurney's Inn, supra.:

> Prior to the enactment of the Bankruptcy Code,
> Section 1 of the Bankruptcy Act of 1898 defined the term
> "corporation" to include trusts "wherein beneficial
> interest or ownership is evidenced by certificate or other
> written instrument." The language was construed to
> mean transferrable certificates. However, the Code, in
> its definition of corporation, removed the reference to the
> structure of beneficial ownership and simply refers to a
> "business trust." The legislative history underlying the
> Code's definition of "corporation" makes clear that,
> except for a "business trust," a trust is not a "person"
> eligible for bankruptcy relief. In re Medallion Realty
> Trust, 103 B.R. 8, 10 (Bankr. D. Mass. 1989), aff'd, 120
> B.R. 245 (D. Mass. 1990).

In re Gurney's Inn Corp. Liquidating Tr., 215 B.R. at 661.

The preceding analysis is further supported by the fact that the term

"entity" in the Bankruptcy Code includes a "trust." 11 U.S.C. §101(15). But,

according to the Bankruptcy Code, debtor eligibility is not afforded to all "entities."

11 U.S.C. § 109(d). Rather, it is limited to "persons," and the only trust within the

definition of a "person" is a "business trust." See 11 U.S.C. §§ 101(9) and 101(41).

The statutory interpretation set forth above is consistent with the fact that

a traditional trust merely embodies a fiduciary relationship, while a business trust

has long been determined to be an unincorporated business entity. See e.g.,

Americold Realty Tr. v. ConAgra Foods, Inc., 136 S.Ct. at 1016 (observing that traditionally an ordinary trust was not considered a distinct legal entity, but a fiduciary relationship between multiple people)(citing Klein v. Bryer, 177 A.2d 412, 413 (Md. 1962 )and RESTATEMENT (SECOND) TRUSTS § 2 (1957)).

## IV.
## Standards for The Federal Question: What is a Business Trust?

Legal scholars have traced the origins of business trusts to eighteenth century England. See Jared W. Speier, Clarifying the Business Trust in Bankruptcy: A Proposed Restatement Test, 43 Pepp.L.Rev. 1067 (2016). At that time:

> [C]orporations in England required authorization by an act of Parliament or charter from the Crown. The process of obtaining authorization from the Crown or Parliament was rigorous, and many citizens formed voluntary associations to offer shares to the public without this proper authorization. In order to stop this practice, British Parliament passed the English Bubble Act in 1719 to limit the creation of associations that attempted to act as corporate bodies. British Parliament later repealed the Bubble Act in 1825; however, this early history serves to point out the genesis of voluntary associations [like a business trust] other than corporations.

Id. at 1068 (footnotes omitted).

In the United States, "Massachusetts served as the forefront of the practical and legal evolution of business trusts because it was one of the last states to

permit incorporation without a special legislative act." Id. at 1069.[9]  According to

a former Chief Judge of this Court, the Honorable Bernard Markovitz:

> A business, or Massachusetts, trust is a type of business
> formation comprising an arrangement whereby property
> is *actually conveyed* to a trustee, who holds and/or
> manages the same for the benefit of the holders of
> transferrable certificates issued by the trustee.  Such a
> relationship exists by reason of a trust instrument and
> the participants. Morrissey v. Commissioner, 296 U.S.
> 344, 56 S.Ct. 289, 80 L.Ed. 263 (1935); In re Vivian A.
> Skaife Irrevocable Trust Agreement No. 1, 90 B.R. 325
> (Bankr. E.D. Tenn. 1988); Matter of Walker, 79 B.R. 59
> (Bankr. M.D. Fla. 1987).

In re Grant Street Project of 220, 224, 228 and 232-236 Grant Street, Sewickley,

Pa., 99 B.R. 677, 678-79 (Bankr. W.D. Pa. 1989).

This definition of a "business trust" seems relatively straight forward.

However, this generalization is nuanced upon closer inspection.  Specifically, this

Court's research reveals that the case law in this area is convoluted because no

uniform standard has emerged to define what constitutes a valid "business trust"

for purposes of debtor eligibility in bankruptcy.

By way of example, there is a disagreement in some of the cases as to

whether a "business trust" determination is based upon state law or whether it is

a federal question. See Cutler v. 65 Security Plan, 831 F. Supp. 1008, 1014-15

(E.D.N.Y. 1993)(collecting cases).  It is this Court's opinion that whether an entity

---

[9]  See Robert C. Brown, Common Law Trusts as Business Enterprises, 3 Ind. L. J. 595
(1928) for an early 20th century discussion of the "trust problem" in the United States.

is eligible for bankruptcy relief is a matter under federal law.  This conclusion

makes sense because debtor eligibility should not vary from state to state.  As one

court held:

> To hold otherwise would result in different results in
> different states and an entity would be eligible for relief
> in one state but not in another.  Clearly this is not what
> Congress intended when it enacted Article I, § 8, Cl. 4 of
> the Constitution, which provides that "Congress shall
> have the power . . . to establish . . . uniform laws on the
> subject of bankruptcies."

Id. at 1015 (quoting In the Matter of Arehart, 52 B.R. 308, 310-11 (Bankr. M.D.

Fla. 1985).

This conclusion also makes sense in light of the United States Supreme

Court decision in Field v. Mans, 516 U.S. 59, 116 S.Ct. 437 (1995).  In Field v.

Mans, the United States Supreme Court declared that when Congress utilizes in

the Bankruptcy Code a term of art with an established legal meaning, Congress

meant to "incorporate the general common law" or the "dominant consensus of

common-law jurisdictions, rather than the law of any particular State." Field, 516

U.S. at 70 n. 9.

This does not mean that matters of state law play no role in the analysis.

As numerous courts have observed, a trust's failure to qualify as a "business

trust" under state law may be evidence of the settlor's intent that the trust not

operate as a business trust. See In re St. Augustine Tr., 109 B.R. 494, 496 (Bankr.

N.D. Fla. 1990); In re Treasure Island Land Tr., 2 B.R. 332, 335 (Bankr. N.D. Fla.

1980).[10]

Even with these precepts, the federal question of what constitutes a "business trust" in bankruptcy is not an easy question to answer. The Court makes this observation because some courts have had difficulty finding a standard definition of the term "business trust." As one court noted: "[t]he decisions are sharply, and perhaps hopelessly divided." In re Medallion Realty Tr., 103 B.R. at 10-11.[11]

Regardless of the division or differences of opinion, nearly all courts look to the underlying trust instrument for guidance. Cutler, 831 F.Supp. at 1015. Outside this aspect, several approaches have emerged to determine whether or not a given trust is a "business trust."

The United States Court of Appeals for the Third Circuit has yet to weigh in on the issue in the context of debtor eligibility under the United States Bankruptcy Code. Notwithstanding this fact, it has examined the differences

---

[10] In other contexts, state law could conceivably operate as a rule of decision. For example, in Butner v. United States, 440 U.S. 48 (1979), the Supreme Court indicated that non-bankruptcy property rights may be recognized in bankruptcy absent countervailing Bankruptcy Code considerations. Butner does not apply to the instant case because this Court is not being tasked with determining the Dille Family Trust's property interests. Rather, it is being asked to determine whether the Dille Family Trust falls within the federal definition of a "debtor" under Section 109 of the Bankruptcy Code. In re Kenneth Allen Knight Tr., 303 F.3d 671, 678-79 (6th Cir. 2002)(holding that Butner does not apply to the federal question of whether a debtor is eligible for bankruptcy as a business trust).

[11] The "hopelessly divided" description in Medallion Realty is actually somewhat pessimistic. A review of the varying standards for determining what is a "business trust" under federal common-law reveals that the standards have a substantial number of overlap and/or similarity.

between a "business trust" and traditional trust for purposes of diversity

jurisdiction. See GBForefront, L.P. v. Forefront Management Grp., L.L.C., 888 F.3d

29 (3rd Cir. 2018).[12]

In GBForefront, Circuit Judge Kent Jordan observed that the "primary point

of distinction is . . . that a traditional trust exists as a fiduciary relationship and

not as a distinct legal entity." GBForefront, L.P., 888 F.3d at 40 (citing Americold

Realty Tr. v. ConAgra Foods, Inc., 136 S.Ct. at 1016).  Another "general distinction

between traditional and business trusts is that a traditional trust facilitates a

donative transfer, whereas a business trust implements a bargained-for-

exchange." Id.

The preceding statement by the Third Circuit is somewhat different than

definitions or descriptions utilized by other courts.  For example, in analyzing the

issue of what is a "business trust" in the context of debtor eligibility, the United

States Court of Appeals for the Sixth Circuit utilized what is called the  "primary

purpose" test.

As the Sixth Circuit explained: "[t]he basic distinction between business

trusts and nonbusiness trusts is that business trusts are created for the purpose

---

[12]    GBForefront addressed the question of whether the citizenship of either the
beneficiaries or the trustee of a trust had to be taken into account for purposes of diversity
jurisdiction.  The Third Circuit Court of Appeals held that there are jurisdictional differences
between a traditional trust and a business trust.  The citizenship of a traditional trust for diversity
purposes is determined by the citizenship of the trustee.  The citizenship of a business trust, as an
unincorporated association, is determined by the citizenship of its members.  GBForefront, supra.
at 40.

of carrying on some kind of business or commercial activity for profit; the object of a nonbusiness trust is to protect and preserve the trust res." In re Kenneth Allen Knight Tr., 303 F.3d 671, 680 (6th Cir. 2002)(quotations omitted and quoting In re Treasure Island Land Tr., 2 B.R. 332, 334 (Bankr. M.D. Fla. 1980)).

The Sixth Circuit therefore fashioned the following test for a business trust: "trusts created with the primary purpose of transacting business or carrying on commercial activity for the benefit of investors qualify as business trusts, while trusts designed merely to preserve the trust res for beneficiaries generally are not business trusts." In re Kenneth Allen Knight, 303 F.3d at 676 (quotations omitted and quoting Brady v. Schilling (In re Kenneth Allen Knight Tr.), 121 F.3d 708, 1997 WL 415318 (6th Cir. July 22, 1997)).

The Second Circuit Court of Appeals has also opined on the issue of what constitutes a "business trust" for purposes of debtor eligibility. Secured Equip. Tr. of E. Airlines, Inc. v. First Fidelity Bank (In re Secured Equip. Tr.), 38 F.3d 86, 89 (2d Cir. 1994). In this regard, the Second Circuit identified several factors for determining whether a trust is a "business trust." In re Secured Equip. Tr., 38 F.3d at 89. These factors are:

> First, "whether the trust at issue has the attributes of a corporation." Id. Second, whether the trust was "created for the purpose of carrying on some kind of business" or created "to protect and preserve the res." Id. Third, whether the trust engages in "business like activities." Id. Fourth, whether the trust "transact[s] business for the benefit of investors." Id. at 90. And, fifth, whether there is "the presence or absence of a profit motive." Id.

> "Ultimately, each decision is based on a very fact-specific analysis of the trust at issue." Id. at 89. Importantly, "the inquiry must focus on the trust documents and the totality of the circumstances, not solely on whether the trust engages in business." Id. at 90-91.

In re Blanche Zwerdling Revocable Living Tr., 531 B.R. at 542-43 (quoting In re

Secured Equip. Tr., 38 F.3d at 89-91)).[13]

Other tests have been utilized by various trial courts. For example, the

United States District Court for the Eastern District of Pennsylvania utilized a

four-part test as part of its analysis in determining whether a "business trust" in

bankruptcy exists. The four key elements highlighted by the Eastern District of

Pennsylvania are:

1. the trust was formed for the primary purpose of transacting business or commercial activity, as opposed to preserving assets;

2. the trust was formed by a group of investors who contribute capital to the enterprise with the expectation of receiving a return on their investment;

3. the trust was created in compliance with state law; and

4. the beneficial interests in the trust must be freely transferrable.

In re Eagle Tr., 1998 WL 635845 at *5 (E.D. Pa. 1998); accord In re Jooben, 385

---

[13] The Second Circuit Court of Appeals observed, and this Court agrees, that there is no finite list of characteristics of a business trust, and that "each decision is based on a very fact-specific analysis of the trust at issue." In re Secured Equip. Tr., 38 F.3d at 89.

B.R. 599 (Bankr. E.D. Pa. 2008).

In another trial court opinion, the United States District Court for the
Eastern District of Missouri looked to the "totality of the circumstances" test
previously utilized in IRS tax cases to determine whether an entity is eligible for
bankruptcy as a "business trust." See Mosby v. Boatmen's Bank of St. Louis Cty.
(In re Mosby), 61 B.R. 636, 638 (E.D. Mo. 1985).

In this regard, the District Court in Mosby recognized that "[i]t is well
established that a business trust is something more than simply a trust that
carries on a business." In re Mosby, 61 B.R. at 638 (citing Hecht v. Malley, 265
U.S. 144, 44 S.Ct. 462, 68 L.Ed. 949 (1924)).  Rather, the Mosby court observed
that business trusts are akin to corporations, and as such the characteristics of
a business trust include the following:

1.   a  trust  created  and  maintained for a
     business purpose;

2.   title to property held by trustees;

3.   centralized management;

4.   continuity uninterrupted by death among
     beneficial owners;

5.   transferability of interests; and

6.   limited liability.

Id. (citing Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263
(1935)).

**V.**
**The General Statement of the Law**

A fair reading  or synthesis of the case law cited above is that the riddle of

whether a trust constitutes a valid "business trust" turns upon two generally

required elements.  The first is whether the trust itself was created for the purpose

of transacting business for a profit (as opposed to merely preserving a res for

beneficiaries).  The second is whether the trust in-fact has all of the indicia of a

corporate entity.  If both of these items are present, then the trust at issue is more

than a gratuitous or ordinary trust and is a business trust.  If any one of these

two characteristics is not present, then the trust is not a "business trust" and is

ineligible for bankruptcy relief under Chapter 11 pursuant to 11 U.S.C. § 109(d).

**VI.**
**The Purpose of the Dille Family Trust**

As to the first element (i.e. whether the trust was created for the purpose of

transacting business for a profit or whether it was created merely for preserving

a res for beneficiaries), the Court looks to the trust instrument and surrounding

circumstances for guidance. Eastern, 38 F.3d at 90-91.

Turning to the plain language of the relevant trust documents, there is no

question that the purpose of the Dille Family Trust is to create an estate-planning

vehicle or otherwise preserve the *res* for family beneficiaries.  The text of the

governing documents supports this conclusion.

For example, the title of the trust instrument describes the trust as a family

trust, as opposed to being a business trust.  In fact, the trust document is plainly labeled *The Dille Family Trust,*[14] and its original settlors are also the beneficiaries under the trust (i.e., Robert C. Dille and, his wife, Virginia N. Dille).[15]  *The Dille Family Trust* also states unequivocally that  "By this trust agreement, settlors intend to provide for themselves, their children [i.e., Ms. Williams and Mr. Flint Dille] and their issue." <u>See</u> Article II of *The Dille Family Trust* at ¶ 2.B.  Accordingly, the Dille Family Trust does not appear to be eligible for relief under title 11 of the United States Code since "family trusts . . . are not eligible for bankruptcy treatment." <u>In re Kenneth Allen Knight Tr.</u>, 303 F.3d at 673.

That the trust at issue is an ordinary trust, as opposed to a business trust is also supported by the fact that the trust document unequivocally provides that the powers of the trustee are "set forth in subparagraphs (1) through (17) inclusive of Section 1120.2 of the California Probate Code …" <u>See</u> *Dille Family Trust*, Article IV.[16]  This admission in the trust document is reflective of the settlors' intent that

---

[14]  As used in this *Memorandum Opinion*, the italicized phrase "*The Dille Family Trust*" refers to the trust agreement that is filed of record.  The non-italicized phrase "Dille Family Trust" refers to the putative debtor.

[15]  In this regard, the Dille Family Trust was also a "living" or "inter-vivos" trust because it went into effect while the settlors were alive.  The settlors also retained certain powers of revocation. <u>See</u> Article V of *The Dille Family Trust* at ¶¶ 5.A. and 5.C.

[16]  The Dille Family Trust was originally created under California law in 1979.  Article 2.F. of *The Dille Family Trust* states that "This Trust Agreement is a California contract and creates a California trust, and all of the terms and provisions hereof shall be interpreted according to the laws of the state of California, except the majority of the beneficiaries may transfer the trust situs to a more convenient jurisdiction."  In 1989, the situs of the Dille Family Trust was

(continued...)

the trust is an ordinary trust as opposed to a business trust because:

> Under California law, "business trusts are by *definition* entirely distinct from 'trusts' created under the California Probate Code. The Probate Code expressly excludes from its scope trusts that are 'taxed as partnerships or corporations.'" *Cal. Prob. Code* § 82(b)(6)(West 1991). Traditional Trusts established to protect or preserve property are usually created as part of estate planning and are subject to state probate law and probate court supervision.

In re Sung Soo Rim Irrevocable Intervivos Tr., 177 B.R. 673, 677 (Bankr. C.D. Cal. 1995).

The Court notes that the objectors to the Motion to Dismiss discount these provisions in *The Dille Family Trust* contending that the trust document affords the trustee "broad ranging powers and privileges necessary to conduct business . . ." See *Supplemental Brief of the Nowlan Family Trust* at p.3, ECF No. 509. These powers include: the management of trust businesses, the ability to sell and lease trust property, and the authorization to borrow or lend money. Id. at pp. 3-4 (citing *The Dille Family Trust* at Articles IV, ¶¶ 4.D., 4.E., 4.F. and 4.T.).

The Court is not convinced that these provisions carry the day. Many ordinary trusts empower the trustee to engage in business activities and remit income from trust assets to beneficiaries, and such facts do not *per se* transform a trust into a "business trust." For example, in In re Eagle Tr., the trust was

---

[16](...continued)
moved to the state of Illinois.

found not to be a business trust even though the trust document empowered the trustee to "engage in whatever business [that] may be lawful" under applicable law. In re Eagle Tr., 1998 WL 635845 at *2.

Similarly, in In re Skaife Irrevocable Tr., 90 B.R. 325, 327-28 (Bankr. E.D. Tenn. 1988), the court held that the trust (whose assets included a number of patents and trademarks) was not a business trust even though the trust agreement empowered the trustee to retain, sell and invest trust property, and to pay income to trust beneficiaries.

The primary purpose of the Dille Family Trust appears to protect and preserve the trust *res* for the settlors and their two children– Lorraine Dille Williams (formerly known as Lorraine Virginia Dille) and Robert Nichols Flint Dille. Section 4.A. of Article IV of *The Dille Family Trust* supports this conclusion, where the trust empowers the trustee to "receive, take possession of, sue for, recover and preserve the assets of the trust fund, both real and personal, coming to its attention or knowledge, and the rents, issues and profits arising from such" assets.

Section 5.F. of Article V of *The Dille Family Trust* provides further support, where it states with respect to tangible personal property the following: "In the event husband and/or wife surrender any such property to the trustee, or upon their deaths, trustee shall take possession, assume control, preserve and maintain such property."

00025941                                -32-

Section 6.A. of Article VI of *The Dille Family Trust* also supports this conclusion where it states: "During the term of this trust agreement, trustee shall hold, manage, invest and reinvest the trust fund, collect the income and profits from it, pay the necessary expenses of trust administration, and distribute the net income and principal as provided in this ARTICLE VI."

Other provisions of *The Dille Family Trust* reflect the estate planning nature of the trust. For example, the document contains provisions relating to the "Division of Trust Fund Upon Death of First Settlor," "Authorized Actions at Settlors' Deaths," "Deceased Spouses Expenses" (including provisions for estate or inheritance taxes, and funeral expenses), "Payments of Income to Surviving Spouse," "Payments of Principal to Surviving Spouse," "Special Withdrawal Rights of Surviving Spouse," "Power of Appointment in Surviving Spouse," and "Distribution at Surviving Spouses' Death." <u>See</u> Article VI of *The Dille Family Trust* at ¶¶ 6.D., 6.F., 6.G., 6.H., 6.I. , 6.J., 6.K., and 6.L.

That the Dille Family Trust is primarily an estate or succession planning device designed to protect and preserve the *res* is embodied in the *Amendment* dated January 5, 1982.  A stated purpose of the amendment was that "several provisions of said [*Dille Family Trust*] agreement require revision in view of the changes in the Federal Estate Tax Law effective January 1, 1982. . ."  <u>See</u> *Amendment* at p. 1.  Ms. Geer has even acknowledged that the *Amendment* was designed to "take advantage of the federal estate tax marital deduction to minimize

the federal estate death tax." <u>See</u> ECF No. 508 at p. 11.

The *Amendment* also contains various provisions addressing "Division of Trust Fund Upon Death of First Settlor," "Authorized Actions at Settlors' Deaths," "Deceased Spouses Expenses," payments to "Surviving Spouse," and "Special Withdrawal Rights of Surviving Spouse." <u>See</u> *Amendment* at pp. 2-8.

The *Amendment* further highlights that in exercising discretion conferred upon the trustee, the "trustee is requested to take into consideration the fact that settlors' intent is to benefit primarily the Surviving Spouse and the interests of the remaindermen should be considered of secondary importance." <u>Id</u>. at p. 4.

All of these provisions of the trust agreement lead this Court to conclude that the Dille Family Trust is an ordinary trust as opposed to a business trust. The Court's conclusion is particularly acute since neither the Chapter 11 Trustee nor Ms. Geer have offered or produced any evidence indicating that when the Dille Family Trust was created the settlors intended anything other than the creation of an ordinary trust.[17]

The record reflects that Lorraine Dille Williams has filed with the Court a letter dated February 5, 2019. In this letter, Ms. Williams admitted that the Dille Family Trust was "created as an estate planning vehicle." <u>See</u> ECF No. 507. She

---

[17] The Nowlan Family Trust joins in the request(s) supporting debtor eligibility. However, like the Chapter 11 Trustee and Ms. Geer, the Nowlan Family Trust has not produced any evidence indicating that when the Dille Family Trust was created the settlors intended anything other than the creation of an ordinary trust.

00025941                                    -34-

also produced an email from her parents' attorney, Dennis Fox, who created the Dille Family Trust.  In this email, Mr. Fox states that the Dille Family Trust "was a revocable, living ('inter-vivos') trust.  I never prepared a 'business trust.'" Id.

Such statements made by Ms. Williams and Mr. Fox are hearsay, because they are out of court statements not made under oath and are offered for the truth of the matter asserted. See Fed.R.Evid. 801.  The Court will therefore not consider them in connection with the findings and conclusions herein.

Regardless, the Court observes that Ms. Geer has filed various documents with the Court. See ECF No. 508.  Such documents include a 2012 U.S. Income Tax Return for Estates and Trusts (Form 1041) filed by the Dille Family Trust. Id. at Ex. F.  In this form, the Dille Family Trust made no election as a small business trust.

In addition, neither the Chapter 11 Trustee nor Ms. Geer has offered any explanation as to why the Dille Family Trust, if it is a true "business trust" to be treated as an entity other than a small business trust, did not file its tax returns using IRS series 1120 forms (which relate to taxation of corporate entities or unincorporated associations having the attributes of corporate entities). See Morrissey v. Commissioner, supra.; see also Ross Lewis Trust v. C.I.R., 1939 WL 12033 (United States Board of Tax Appeals, April 26, 1939);  Guitar Trust Estate v. C.I.R., 1932 WL 504, 25 B.T.A. 1213 (United States Board of Tax Appeals, April 21, 1932).  Perhaps its because the Dille Family Trust is an ordinary trust, i.e. a

fiduciary relationship, and not a business trust.

A review of the litigation before the California District Court reflects that the Dille Family Trust argued as much.[18]  Specifically, in the California District Court action, Ms. Geer argued that because the Dille Family Trust "lacks the capacity to sue and be sued," the lawsuit should be dismissed or transferred to the location where Ms. Geer resides.  See *Motion to Dismiss Complaint* at pp.1, 3, 5, and 7-8 (filed at ECF No. 15 at Case No. CV 15-05880-R (C.D. Cal. 2015)).

In support for this assertion, Ms. Geer further stated that a "trust is not a legal entity" but rather is a fiduciary relationship. Id. at p. 5.  Therefore, she admitted that "the Trust has no independent legal existence and therefore jurisdiction must exist over the Trustee [Ms. Geer] personally."  See *Reply Memorandum in Support of Motion to Dismiss Plaintiff's Complaint* at pp. 6, 9, and 11 (filed at ECF No. 23 at Case No. CV 15-05880-R (C.D. Cal. 2015)).  The Central District of California then transferred the civil action to the Western District of Pennsylvania apparently in agreement with the position of Ms. Geer.

All of these circumstances reflect that the Dille Family Trust is to be regarded as an ordinary trust as opposed to a business trust.

---

[18]  See Team Angry Filmworks, Inc. v. Louise A. Geer, as Trustee for the Dille Family Tr. et al., No. CV 15-05880-R (C.D. Cal. 2015).  The parties to this litigation consented to the Court taking judicial notice of the record in this district court case and others.

## VII.
## Business Activity, Without More, Does
## Not Convert the Trust Into a Business Trust

It is true that the Dille Family Trust has from time to time licensed certain "Buck Rogers" related intellectual property. The extent and magnitude of these affairs is hardly clear in the record.[19]

For example, Ms. Geer points to the *Documentation of Flint Dille in Support of Proof of Claim* as evidence of the alleged extensive business activities of the Dille Family Trust. Aside from being hearsay, this document is far from being convincing support for the legal position of Ms. Geer because it states unequivocally at paragraph 23: "There were numerous deals that did not happen due to either incompetence or other agenda of the Trustee of the Trust." See ECF No. 508.

In addition, the 2012 tax returns filed by Ms. Geer reflect no net income[20] as all royalties were consumed by the professional expenses and management fees of the trustee. Id.

In filings made by Ms. Geer before this Court under penalty of perjury, the gross revenue of the Dille Family Trust was admitted as being "none" when this

---

[19]   Team Angry Filmworks and Mr. Murphy have attached to some of their submissions portions of account ledgers and bank account statements reflecting certain alleged economic activity, whether it be the collection of licensing fees or borrowing funds from Ms. Williams to pay for legal expenses incident to the copyright and trademark litigation.

[20]   Stated in other words, the Dille Family Trust had some gross revenue in 2012 (approximately $62,000). But, the tax return for this year reflects that all of the revenue was predominantly utilized to pay professional fees of the trust and to pay Ms. Geer.

bankruptcy case was commenced. <u>See</u> *Statement of Financial Affairs*, ECF No. 17, at ¶1.  Moreover, the monthly operating reports filed in this bankruptcy case by Ms. Geer and the Chapter 11 Trustee reflects virtually no revenue and no employees of the Dille Family Trust. <u>See</u> ECF Nos. 47, 62, 97, 119, 149, 180, 323, 327, 328, 483, 484, 385, and 486.

The scant record relating to business activities means that neither the Chapter 11 Trustee nor Ms. Geer have met their burden of proof.  Regardless, as the Second Circuit Court of Appeals remarked in <u>Eastern Airlines</u>, "[while a trust] must engage in business-like activities, such activity, without more, does not demonstrate that the trust is a business trust." <u>Eastern</u>, 38 F.3d at 90.

The fact remains that "examination of trust documents is essential to a just determination of whether a trust qualifies as a business trust." <u>In re Gurneys Inn Corp.</u>, 215 B.R. at 663.  To hold otherwise:

> would make eligibility for relief dependent upon the whim of the trustee.  At any given time the trust might or might not be eligible for bankruptcy relief depending upon whether the trustee, in her discretion, was engaging in business operations rather than in one of other options afforded her under . . . the Trust Agreement.

<u>Id</u>. (quoting <u>In re Vivian A. Skaife Irrevocable Tr. Agreement #1</u>, 90 B.R. at 328).

In reviewing the circumstances of the Dille Family Trust, this Court concludes that the facts of this case are similar to the facts of <u>In re Vivian A. Skaife Irrevocable Tr.</u>, <u>supra</u>.  As summarized by another court:

In the case of <u>Skaife Irrevocable Trust</u>, the trust was formed by the grantor for the benefit of her two children and their spouses. Trust assets consisted of shares of stock in several corporations, a number of patents, and trademarks. The trust agreement directed the trustee to pay income to the beneficiaries, and empowered the trustee to invade the principal if the income was insufficient for their comfort and support. The trust agreement vested the trustee with broad discretionary powers, including to retain, sell and invest trust property, to borrow money for any purpose, to mortgage and pledge trust property, to receive and commingle any other property, and to "'operate, maintain, repair, rehabilitate, alter or remove any improvements on real estate." <u>Id</u>. [90 B.R.] at 327. The court found that the object and purpose of the trust was to provide assets for the comfort and support of the two beneficiaries, and that business activities were but one of the options considered by the trustee in promoting the purposes of the trust. The court therefore held that the trust was not a business trust and, as a result, was not eligible for relief under Chapter 11.

<u>In re Gurney's Inn Corp.</u>, 215 B.R. at 664.

Given the foregoing, this Court finds that the primary purpose of the Dille Family Trust is to protect and preserve the *res* for the benefit of the family beneficiaries under the trust, and not primarily for transacting business for a profit. For this reason alone, the Dille Family Trust does not qualify as a "business trust" and is therefore ineligible for bankruptcy relief by operation of 11 U.S.C. §§ 101(9), 101(41), and 109(d).

## VIII.
## Indicia of Corporateness Are Absent

As to indicia of corporateness, the Court has canvassed the record and

submissions of the parties and finds that the weight of the record supports a finding that the Dille Family Trust lacks sufficient characteristics of a corporate entity and is therefore determined to be an ordinary trust not eligible for bankruptcy.

## A.

The Third Circuit has held that the general distinction between traditional and business trusts is that a traditional trust facilitates a donative transfer, whereas a business trust implements a bargained-for-exchange. GBForefront, 888 F.3d at 40. Neither the Chapter 11 Trustee nor Ms. Geer has offered any evidence indicating that the trust assets were the product of a bargained-for-exchange with the settlors and/or beneficiaries. As such, the Chapter 11 Trustee and Ms. Geer have not proven that the Dille Family Trust is a business trust under the test articulated in GBForefront.

## B.

The Second Circuit in Secured Equip. Trust, and the United States Bankruptcy Court and District Court for the Eastern District of Pennsylvania in Joobeen and Eagle Trust, respectively, have noted that one of the key attributes of a business trust is that the trust is formed by a group of investors who contribute capital to the enterprise with the expectation of receiving a return on their investment. See Secured Equip Trust, 38 F.3d at 90; Eagle Trust, 1998 WL at *5; In re Joobeen, 385 B.R. at 613; accord Kenneth Allen Knight, 303 F.3d at

676 (trust not created for purpose of carrying on commercial activity "for the benefit of investors" is not a business trust).

Nothing in the Dille Family Trust suggests that the trust was created by a group of "investors." Rather, it appears that the trust was created by Mr. & Mrs. Dille to preserve their assets for the benefit of themselves and their children. Thus under the tests articulated in these cases, the Dille Family Trust is not a business trust.

## C.

The United States Supreme Court in <u>Morrisey</u>, and the United States District Court for the Eastern District of Missouri in <u>Mosby</u>, have also opined that indicia of corporateness includes: continuity of the business enterprise uninterrupted by death among beneficial owners, and the transferability of interests. <u>See</u> <u>Morrisey</u>, 56 S.Ct. at 296-97; <u>Mosby</u>, 61 B.R. at 638; <u>see also</u> <u>In re Parade Realty, Inc. v. Emps. Ret. Pension Tr.</u>, 134 B.R. 7, 11 (Bankr. D. Hawaii 1991); <u>accord</u> <u>Koenig v. Johnson</u>, 163 P.2d 746, 751-56 (Cal. 1945)(discussing <u>Morrisey</u> and other cases).[21]

---

[21] To be clear, the citation to <u>Koenig</u> should not be construed as the Court concluding that state law is the governing decisional law with respect to debtor eligibility in bankruptcy. As set forth in Part IV of this *Memorandum Opinion*, such a determination is a matter of federal law. The Court's citation to <u>Koenig</u> highlights the fact that California state law cases are consistent with the federal common law in this area. <u>See</u> <u>e.g.,</u> <u>In re Sung Soo Rim Irrevocable Intervivos Tr.</u>, 177 B.R. at 675-78. The Court also recognizes that Ms. Geer devotes much of her papers to a discussion of the Pennsylvania Commonwealth Court case of <u>Kosco v. Com.</u>, 987 A.2d 181, 187-89 (Pa. Commw. Ct. 2009). <u>Kosco</u> has no bearing *sub judice* because the *Dille Family Trust*
(continued...)

*The Dille Family Trust*, however plainly states that:

> The interest of any beneficiary (whether entitled to current income or possessing only a future interest) in either the income or principal of the trust fund or any part of it shall not be alienated or in any manner assigned or transferred by such beneficiary; and such interest shall be exempt from execution, attachment, distress for rent, and other legal or equitable process which may be instituted by or on behalf of any creditor or assignee of such beneficiary...

<u>See</u> *The Dille Family Trust*, Article II at ¶ 2.G.[22]  The Dille Family Trust also does not have continuous existence past the death of both the settlors and beneficiaries, because the trust document provides:

> Anything herein contained to the contrary notwithstanding, each trust created by this trust agreement, unless sooner terminated in the manner hereafter provided, shall and immediately prior to the expiration of twenty-one years from and after the death of the last survivor of settlors and settlors' now living issue; and thereupon trustee shall pay over the principal of each such trust, free from this trust, unto the person

---

[21](...continued)

is a trust created under California law.  <u>Kosco</u> also has no application because the purpose of the Dille Family Trust is to protect and preserve the trust *res* for the settlors and beneficiaries. Moreover, as set forth above, the Dille Family Trust lacks many indicia of corporateness.  For example, it lacks the transferability of interests and there is no perpetual life of the alleged entity.

[22] Paragraph 2.G. of *The Dille Family Trust* is a "spendthrift" provision in the agreement. Many cases from across the country have concluded that family and/or spendthrift trusts do not qualify as business trusts under the Bankruptcy Code. <u>See</u>, <u>e.g.</u>, <u>Sung Soo Rim</u>, 177 B.R. at 674-79; <u>In re St. Augustine Tr.</u>, 109 B.R 494 (Bankr. M.D. Fla. 1990); <u>Parade Realty</u>, 134 B.R. at 8-11; <u>In re L&V Realty Tr.</u>, 61 B.R. 423 (Bankr. D. Mass. 1986); <u>In re Cura</u>, 2006 WL 2666082 (Bankr. D. Conn. 2006); <u>In re Mortg. Banking and Tr. (Nash)</u>, 2008 WL 3126186 (Bankr. D. Md. 2008); <u>In re Betty L. Hays Tr.</u>, 65 B.R. 665 (Bankr. D. Neb. 1986); <u>In re Morgantown Tr. No. 1</u>, 155 B.R. 137 (Bankr. N.D. W. Va. 1993); <u>In re Woodville Realty Tr.</u>, 120 B.R. 2 (D.N.H. 1990); and <u>In re Margaret E. DeHoff Tr. I</u>, 114 B.R. 189 (Bankr. W.D. Mo. 1990).

then entitled to receive the net income from each such
trust.

Id. at 2.H.  These provisions militate against a finding that the trust is a business

trust.  As a result this bankruptcy case must be dismissed for want of debtor

eligibility.

## IX.
## Waiver & Estoppel Do Not Apply to Defeat the Motion to Dismiss

In rendering its decision, this Court has not forgotten about the extensive

work performed by the Chapter 11 Trustee in this case.  Indeed, the record in this

case reflects that the Chapter 11 Trustee approached this case with the utmost

vigor and professionalism.

Had this Court been afforded the opportunity to write this opinion on a

clean slate, it surely would deny the Motion to Dismiss and afford the Chapter 11

Trustee the opportunity to finish his work.

Unfortunately, the fact remains that the Dille Family Trust is not a

"business trust."  The plain language of the Bankruptcy Code therefore precludes

this Court from rendering the Dille Family Trust eligible for bankruptcy relief by

way of judicial fiat.  As this Court has observed before, equity follows the law and

is not a basis for the Court to re-write the Bankruptcy Code.  In re Rickard, 520

B.R. 486, 490 (Bankr. W.D. Pa. 2014).

For purposes of completeness, the Court has duly considered the question

of whether the movants have waived any claim that the Dille Family Trust is

ineligible for bankruptcy relief.  In a different context, such arguments might be persuasive because the debtor eligibility provisions of the Bankruptcy Code are not jurisdictional and could be waived by parties-in-interest. See In re Tomco, 339 B.R. 145, 154 (Bankr. W.D. Pa. 2006)(failure to timely and promptly object to eligibility could result in such party being "barred from later challenging the debtor's eligibility pursuant to the doctrines of waiver, estoppel, or *res judicata*")(citing In re Ross, 338 B.R. 134, 140-41 (Bankr. N.D. Ga. 2006)); see also In re Tomco, 339 B.R. at 159 (following In re Ross, 338 B.R. at 138-41, and holding that Section 109 of the Bankruptcy Code is not jurisdictional); and Adams v. Zarnel (In re Zarnel), 619 F.3d 156, 168-69 (2d Cir. 2010)(holding that debtor eligibility is non-jurisdictional).

The arguments of the Chapter 11 Trustee and the other objectors are not persuasive because the record of this case reflects that the elements of waiver have not been met.  According to the Third Circuit Court of Appeals, a waiver is an "intentional relinquishment or abandonment of a known right."  Tri-M Grp., LLC v. Sharp, 638 F.3d 406, 432 n. 1 (3d Cir. 2011).  To constitute a waiver of a legal right, there must be a clear, unequivocal, and decisive act of the party with knowledge of such right and an evident purpose to surrender it. Kingsly Compression, Inc. v. Mountain Oil & Gas, Inc., 2010 WL 4929076 at *6 (W.D. Pa. Nov. 30, 2010).

The record in this case is that there has been no intentional abandonment

by Don Murphy and Team Angry Filmworks of their right to seek dismissal of this case for lack of eligibility pursuant to 11 U.S.C. § 109.  Yes, these parties previously withdrew their prior motion to dismiss, but such withdrawal was expressly premised upon a settlement with the Chapter 11 Trustee that was later revoked.  Moreover, such withdrawal of the prior motion was expressly and plainly understood by all to be "without prejudice."[23]  That is, Team Angry Filmworks and Mr. Murphy, with the consent of the Chapter 11 Trustee, reserved the right to re-institute the motion to dismiss if their deal fell apart or otherwise was not approved. These circumstances clearly reflect an intent to <u>not surrender</u> the right until such time that the proposed settlement was approved and consummated (which was never done).

These circumstances also preclude the application of equitable estoppel. "Equitable estoppel is a doctrine that prevents one from doing an act differently than the manner in which another was induced by word or deed to expect." <u>Novelty Knitting Mills, Inc. v. Siskind</u>, 457 A.2d 502, 503 (Pa. 1983).  Courts have held that "two essential elements of equitable estoppel are inducement and justifiable reliance on that inducement." <u>Novelty</u>, 457 A.2d at 503-04.

The only promise that Team Angry Filmworks and Don Murphy made with

---

[23]  The Nowlan Family Trust has alleged in its opposition papers that the original motion to dismiss by Team Angry and Mr. Murphy were <u>not</u> withdrawn without prejudice. <u>See</u> *Response to Motion to Dismiss*, ECF No. 466 at ¶ 11.  This allegation is factually incorrect.  The Court's Order dated August 21, 2018 states that the pertinent motions were withdrawn or denied "without prejudice." <u>See</u> ECF No. 307.

respect its prior motion to dismiss was that it was withdrawn "without prejudice." The record reflects that there was no inducement or promise that such parties would <u>not</u> renew their motion if the parties' deal fell apart.  This record hardly supports a claim of estoppel because the Chapter 11 Trustee received exactly what he agreed to in this case, that is that the parties could renew their motion to dismiss if the original settlement was not consummated or approved.  As such, any defense based upon waiver or estoppel is misplaced.

## X.
## Some of the Movants Have Standing

Lastly, the Court recognizes that the Chapter 11 Trustee and other objectors have argued in passing that the movants lack standing to prosecute the Motion to Dismiss.  The record reflects, however, that Lorraine Dille Williams and Robert Nichols Flint Dille are the beneficiaries of the Dille Family Trust, and the current plan and motions of the Chapter 11 Trustee allegedly impair their interests.

The Dille Family Trust's schedules also reflect that Lorraine Dille Williams holds undisputed claims aggregating $363,409.57.  <u>See</u> ECF No. 17 at *Schedule E/F.*  The record further reflects that Team Angry Filmworks filed a claim at Claim No. 5 and an Amended Claim at Claim No 5-2 in the amount of $166,491.70.  Robert Nichols Flint Dille also filed a claim at Claim No. 7 in the amount of $3,950,000.

While such claims of Team Angry Filmworks and Mr. Dille may be disputed, the claims objections have not been fully litigated and Team Angry and Mr. Dille

still hold "claims" as defined in the Bankruptcy Code. <u>See</u>  11 U.S.C. § 101(5).

Thus, even if Don Murphy lacks the requisite standing,[24] these circumstances

warrant overruling any standing challenges to the Motion to Dismiss because the

pecuniary interests of three of the four movants are affected by the outcome of this

bankruptcy. <u>In re Amatex Corp.</u>, 755 F.2d 1034, 1043-43 (3d Cir. 1985)(standing

conferred where party was affected by outcome of proceeding);  <u>In re Kutner</u>, 3

B.R. 422 (Bankr. N.D. Tex. 1980)(standing requires pecuniary interest directly

affected by the proceeding or a financial interest in the estate being administered).

This determination is supported by the fact that 11 U.S.C. § 1109(b) states

unequivocally that: "A party in interest, including . . . a creditor, [or] equity

security holder . . . may appear and be heard on any issue in a case" under

Chapter 11.

## XI.
## Conclusion

In the opening lines of this *Memorandum Opinion*, the Court described this

case as a saga.  When the Court appointed a Chapter 11 Trustee in this case, it

was done with the hopes that the appointment would have the positive impact of

paving the way to consensual resolution of much of the litigation between the

---

[24]  Team Angry Filmworks and Don Murphy filed a pleading in the case making the
affirmative statement that: "All have filed sizeable proofs of claims in this case as well." <u>See</u>
ECF No. 530.  This statement is incorrect because no claim of Mr. Murphy can be found on the
claims register.  As such, Mr. Murphy has not demonstrated that he personally has standing to
prosecute the Motion to Dismiss.

parties.  Unfortunately, that has not occurred.

For the reasons set forth above, this saga may continue albeit before a different court (or courts) because the Dille Family Trust is ineligible for bankruptcy relief.  For this reason, a separate order shall be entered that dismisses this case with prejudice.  Dismissal of the instant bankruptcy case shall also result in the denial of all pending motions that remain in this case, as such motions are now moot.

Date: February 20, 2019

_____
The Honorable Jeffery A. Deller
United States Bankruptcy Judge

cc:    Robert S. Bernstein, Esq., Chapter 11 Trustee
       Donald Calaiaro, Esq., Counsel to the former Debtor
       Aurelius Robleto, Esq., Counsel to Don Murphy and Team Angry Filmworks
       Daniel Herman, Esq, Counsel to the Trustee of the Dille Family Trust
       Edgardo Santillan, Esq., Counsel to the Nowlan Family Trust
       Lorraine Dille Williams, Pro Se
       Salene Kraemer Mazur, Esq., Counsel to Flint Dille
       Office of the U.S. Trustee
       The Honorable Wendy Beetlestone, United States District Judge (E.D. Pa.)
       The Honorable Joy Flowers Conti, United States District Judge (W.D. Pa.)

FILED
2/20/19 10:03 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA

00025941